# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00335-CV

**Elizabeth Goodson, Appellant**

**v.**

**Adelina Castellanos, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 02-758-F277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## O P I N I O N

Elizabeth Goodson traveled to Kazakstan to adopt K.G. After returning from Kazakstan, Goodson and her girlfriend, Adelina Castellanos, filed a joint petition to adopt K.G. in Bexar County, and a district court granted the adoption. Subsequent to the adoption, the relationship between Goodson and Castellanos ended, and Castellanos filed a suit affecting the parent-child relationship. After a trial, the district court entered an order appointing Castellanos as the sole managing conservator of K.G. and ordered Goodson to pay attorney's fees and child support. Goodson appeals the judgment of the district court. We will affirm the judgment of the district court in part and reverse and remand in part.

## BACKGROUND

In 1997, Goodson and Castellanos began dating, and, shortly thereafter, the couple began living in Goodson's home. During the time the couple lived together, Goodson began researching adoption options. During her search, Goodson found K.G. in Kazakstan and began the

adoption process. She filed an application with an adoption agency and initiated the Immigration and Naturalization Service procedure to allow K.G. to enter the United States.

In September 2000, Goodson traveled to Kazakstan and adopted K.G., who was three years old at the time. The Kazakstanian adoption certificate lists Goodson as the adoptive parent. Upon returning to Texas, Goodson obtained a Texas birth certificate for K.G. and filed a certificate of adoption with the Department of Health, both of which identified Goodson as K.G.'s mother. In March 2001, Goodson and Castellanos filed a joint petition to adopt K.G. in Bexar County. A Bexar County district court granted the adoption, and the decree specified that a parent-child relationship existed between K.G. and Goodson and K.G. and Castellanos.

In April 2002, the relationship between Goodson and Castellanos ended. Later that month, Castellanos filed a suit affecting the parent-child relationship.[1] After a hearing, the district court issued temporary orders appointing Goodson and Castellanos as temporary joint managing conservators for K.G. and specifying that Castellanos had the exclusive right to establish K.G.'s primary residence. In addition, the court ordered Goodson to pay child support and provide health insurance for K.G. Prior to the trial, the district court appointed an amicus attorney, Ed Walsh, to represent the best interests of K.G. Both parties were required to deposit $5,000 into an account to pay for the services provided by the amicus.

After the trial, the jury determined that Castellanos should be appointed sole managing conservator for K.G. and concluded that Goodson should pay attorney's fees to Castellanos. Subsequently, the court issued an order that appointed Castellanos as the sole managing

---

[1] Prior to trial, both parties filed complaints with Child Protective Services alleging that K.G. had been abused while in the other party's custody.

conservator of K.G., appointed Goodson as the possessory conservator of K.G., ordered Goodson to make monthly child support payments in the amount of $788.00 and pay for K.G.'s health insurance, and required Goodson to pay $45,854.41 in attorney's fees to Castellanos and $5,035.50 in attorney's fees to Walsh. The order also declared that Goodson was given the standard possession rights described in the family code. *See* Tex. Fam. Code Ann. §§ 153.311-.317 (West 2002 & Supp. 2006). On the same day it issued the order, the court also released an opinion concluding that two members of the same sex may not jointly adopt a child under Texas law. Goodson appeals the judgment of the district court.

## DISCUSSION

Goodson raises ten issues on appeal. First, Goodson argues that the trial court erred in rendering its judgment because the Bexar County adoption order is void. Second, she asserts that she should have been appointed as K.G.'s sole managing conservator because, as K.G.'s mother, she is entitled to the presumption in favor of naming parents sole managing conservators. Next, she argues that, because she is the sole legal parent of K.G., the district court violated her constitutional right to make decisions concerning K.G.'s care, custody, and control free from governmental interference by appointing Castellanos as the sole managing conservator. In addition, she argues that the district court abused its discretion by (1) failing to admit evidence concerning Castellanos's brother and showing that Castellanos allowed personal contact between her brother and K.G. and (2) ordering Goodson to pay child support and attorney's fees. Finally, she argues that there is insufficient evidence to support the amount of child support awarded or the award of attorney's fees.

3

**The Bexar County Adoption is Not Void**

In her first issue, Goodson contends that the district court erred when it issued a judgment in favor of Castellanos because the Bexar County adoption decree is void. Further, Goodson asserts that, because the decree is void, Castellanos has not been awarded any legal parental rights over K.G. Additionally, Goodson argues that, because she previously obtained a final adoption order from Kazakstan, she is the only legally recognized parent for K.G. Finally, she argues that Castellanos's claims are barred by res judicata and that Castellanos does not have standing to maintain this suit.

*Jurisdiction*

Goodson argues that the Bexar County adoption decree is void and subject to collateral attack. *See Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988) (collateral attack is attempt to avoid effect of one judgment in proceeding initiated for different purpose), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996). Specifically, Goodson argues that the Bexar County district court lacked subject matter jurisdiction over an adoption of a child by two members of the same sex and lacked jurisdiction to issue the adoption decree. Therefore, she asserts that the decree is subject to collateral attack. *See Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973) (judgment may be collaterally attacked on grounds that court has: (1) no jurisdiction over party or over property, (2) no jurisdiction over subject matter, (3) no jurisdiction to enter particular judgment, or (4) no capacity to act as court); *Woodfin v. Coleman*, 931 S.W.2d 383, 384 (Tex. App.—Austin 1996, writ denied) (same).

In support of these assertions, Goodson refers to various definitions found in the family code as proof that two individuals of the same sex cannot both be parents of one child. *See,*

4

*e.g.*, Tex. Fam. Code Ann. §§ 101.024 (definition of parent), 101.025 (West 2002 & Supp. 2006) (definition of parent-child relationship). Goodson also refers to section 192.008 of the health and safety code, which states that a supplementary birth certificate for an adopted child "must be in the names of the adoptive parents, one of whom must be a female . . . and the other of whom must be a male" and notes that Castellanos's name does not appear on either K.G.'s birth certificate or his Texas certificate of adoption. *See* Tex. Health & Safety Code Ann. § 192.008(a) (West 2001); *see also id.* § 192.002(c), (d) (West 2001) (referring to social security numbers of "the mother and father" on birth certificates).

Finally, Goodson cites to the family code provision in effect during the relevant time that specified who may adopt a child. *See* Act of May 16, 1997, 75th Leg., R.S., ch. 561, § 14, sec. 162.001, 1997 Tex. Gen. Laws 1983, 1991 ("former section 162.001"). Former section 162.001 specified that an adoption may occur when (1) the child's parental relationships with each living parent have been terminated, or a suit seeking termination of the relationships has been filed; (2) the spouse of a parent whose relationship has not been terminated desires to adopt the child; or (3) a former stepparent wants to adopt the child and has been caring for him. *Id.*[2] Goodson argues that Castellanos was not eligible under this section because (1) Goodson was the only legal parent, and

---

[2] In 2003, section 162.001 was amended. *See* Act of May 21, 2003, 78th Leg., R.S., ch. 493, § 1, sec. 162.001, 2003 Tex. Gen. Laws 1764, 1764. The current version of subsection 162.001(b)(3) allows an individual who is not the former stepparent of the child to adopt if the individual is the managing conservator or has had "actual care, possession, and control of the child" for a prescribed period of time. Tex. Fam. Code Ann. § 162.001 (West Supp. 2006).

5

her parental rights were not terminated; (2) Castellanos and Goodson were never legally married; and (3) Castellanos was not a former stepparent of K.G.[3]

We disagree with Goodson's contention that the adoption decree is void. Texas district courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Article five, section eight of the Texas Constitution provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8; *see also Kazi*, 12 S.W.3d at 76 (district court had jurisdiction over claim because wrongful death claim was within constitutional jurisdiction of court, not because party satisfied statutory requirements). The government code further specifies that district courts "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. § 24.008 (West 2004). Unless

---

[3] In support of her claims, Goodson also refers to an attorney general opinion written in 1939. *See* Op. Tex. Att'y Gen. No. 0-532 (1939). The opinion specified that the statutes in effect at the time the opinion was written only allowed a child to be adopted by a single person or by a married couple. *Id.* Further, the opinion stated that the law prohibited "joint" adoptions by two people unless the two people were a husband and a wife. *Id.* Finally, the letter stated that the adoption of a child by two single women was illegal. *Id.*

Goodson's reliance on this opinion is misplaced. First, attorney general opinions, although persuasive, are not binding authority. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997); *see also Bradley v. Swearingen*, 525 S.W.2d 280, 282 (Tex. Civ. App.—Eastland 1975, no writ) (disagreeing with different attorney general opinion). Second, the law relating to the adoption of children described in the letter is no longer in effect. Finally, the current provision of the family code authorizing who may adopt a child is broader than the 1939 statute and does not limit the people who may adopt a child to only single individuals and married couples. *See* Tex. Fam. Code Ann. § 162.001 (West Supp. 2006).

the legislature or Congress has provided that a claim be heard elsewhere, district courts are presumed to have subject matter jurisdiction over a claim. *Kazi*, 12 S.W.3d at 75. Further, the modern trend is to "'reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.'" *Id.* at 76 (quoting Restatement (Second) of Judgments § 11 cmt. E, at 113 (1982)). Moreover, the family code specifically authorizes district courts to issue adoption orders. *See* Tex. Fam. Code Ann. § 162.016 (West 2002).

Assuming without deciding that the district court erred in issuing the adoption decree, the error was based on an erroneous construction of statutes, and the judgment would be based on an erroneous holding of substantive law. These errors would not deprive the district court of jurisdiction over the adoption and would not render the decree void. *See Lawrence v. Lawrence*, 911 S.W.2d 450, 452 n.1 (Tex. App.—Texarkana 1995, writ denied) (judgment based on erroneous holdings of substantive law is not void); *Stinson v. Stinson*, 668 S.W.2d 840, 841 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (party could not collaterally attack divorce decree even if court erroneously rendered judgment because error of substantive law does not render judgment void); *see also Medina v. Yzaguirre*, 304 S.W.2d 715, 718 (Tex. Civ. App.—Eastland 1957, no writ) (mother's consent was irregular and did not comply with requirements of statute, but this did not deprive court of jurisdiction and did not render adoption decree void).[4]

Moreover, the district court's alleged error would not have deprived it of jurisdiction to enter this particular adoption order. A district court does not have jurisdiction to enter a particular order when the action complained of "strikes at the very power of the court to render the judgment."

---

[4] There is no dispute that the district court had personal jurisdiction over the parties in this suit.

7

*Sierra Club*, 495 S.W.2d at 882. However, as described previously, district courts have jurisdiction over adoptions, and the family code specifically authorizes district courts to issue adoption orders. *See* Tex. Fam. Code Ann. § 162.016. Therefore, the district court's issuance of the adoption decree did not run afoul of the court's power to enter judgments.

Accordingly, we conclude that the district court was not deprived of subject matter jurisdiction over the adoption or deprived of the jurisdiction to enter the adoption decree at issue in this case. *Cf. Berry v. Berry*, 786 S.W.2d 672, 673 (Tex. 1990) (although judgment may be erroneous, it is not void if court had jurisdiction over parties and subject matter); *see also Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 182-83 (Tex. 2004) (failure to fulfill property code requirement was not jurisdictional). Consequently, Goodson may not collaterally attack the adoption decree. *See Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) (nonjurisdictional claims may render judgment voidable, in which case judgment may be corrected through ordinary appellate process, but may not be used to collaterally attack judgment).

Furthermore, Goodson did not attack the validity of the adoption within the deadline mandated by statute. In March 2001, the Bexar County district court, after considering the qualifications of both parties, concluded that granting the adoption was in the best interests of K.G. and issued the adoption decree. Neither party appealed the adoption decree, and Goodson did not attack its validity until July 2003. However, section 162.012 of the family code prohibits all challenges to an adoption decree if they are filed more than six months after an adoption order is signed. Tex. Fam. Code Ann. § 162.012 (West 2002). Section 162.012 of the family code, entitled "Direct or Collateral Attack," provides, in relevant part, as follows:

8

(a) Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an adoption order is not subject to attack after six months after the date the order was signed.

*Id.*;[5] *see In re C.R.P.*, 192 S.W.3d 823, 826 (Tex. App.—Fort Worth 2006, no pet.) (validity of adoption order is not subject to attack after six-month deadline expires); *see also Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 363 (Tex. 2000) (courts must enforce plain meaning of unambiguous statute).

By enacting this statute, the legislature clearly evidenced its intent that it is the public policy of this State that adoptions cannot be attacked more than six months after the issuance of the adoption on any basis.[6] *See Hobbs v. Van Stavern*, No. 01-05-00632-CV, 2006 Tex. App. LEXIS 9529, at *8 (Houston [1st Dist.] Nov. 2, 2006, no pet. h.) (no exception exists for challenging adoption past six-month limitation, not even on grounds that adoption is purportedly void). The justifications in favor of this deadline are numerous. To encourage adoptions, adoptive parents should be assured that, after a reasonable amount of time, their parental claims may not be brutally

---

[5] Under the prior version of section 162.012, parties were allowed to challenge an adoption decree two years after the order was entered. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, sec. 16.012, 1973 Tex. Gen. Laws 1411, 1431. In 1997, the time to contest an adoption was reduced to six months. The bill analysis accompanying the amendment specifies that the purpose of the amendment was to narrow the time period in which an adoption may be contested. *See* Senate Comm. on Jurisprudence, Bill Analysis, S.B. 52 (1997); *see also* Act of May 28, 1997, 75th Leg., R.S., ch. 601, § 1, sec. 162.012, 1997 Tex. Gen. Laws 2118, 2118 (amendment).

[6] In describing this public policy, the district court commented:

There are valid reasons for adoptions to be unassailable after a six-month period. The thousands of adoptive parents throughout Texas are entitled to know that their adoption is absolutely final as they go about the business of raising their children.

9

revoked due to a procedural error, birth parents changing their mind years later, or a change in relationship with another parent. The destruction of a parent-child relationship is a traumatic experience that can lead to emotional devastation for all the parties involved, and all reasonable efforts to prevent this outcome must be invoked when there is no indication that the destruction of the existing parent-child relationship is in the best interest of the child. *See Catholic Charities v. Harper*, 337 S.W.2d 111, 114 (Tex. 1960) ("It would hardly have been in contemplation of the Legislature that, after these steps [towards adoption] had been taken, involving not only expense, time and trouble, but what is important the formation of ties of love and affection, all of this should be nullified and set at naught for no reason other than that the natural parents have changed their minds and desire to have the children restored to them."). This deadline also comports with the public policy of this State to provide children with a stable environment in which to be raised. *See* Tex. Fam. Code Ann. § 153.001(a)(2) (West 2002) ("The public policy of this state is to . . . provide a safe, stable, and nonviolent environment for the child."); *see also id.* § 160.607(a) (West Supp. 2006) (preventing challenge to parentage of child with presumed father if not filed within four years of birth of child), § 161.211 (West 2002) (prohibiting direct or collateral attack on validity of order terminating parental rights more than six months after order is issued); *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003) (section 162.211 was enacted to "ensure that children's lives are not kept in limbo").

Goodson argues that construing section 162.012 as prohibiting her from attacking the validity of the Bexar County adoption will lead to absurd results. For example, she argues that, under this interpretation, if an individual is able to obtain an adoption order for a pet or for a dead child, the adoption will become unassailable after six months. Further, she argues that this

construction will allow for an adoption of a child by a sex offender and an adoption obtained by fraud or duress to become incontestable six months after the decree issues.

We first note that our interpretation of section 162.012 does not prohibit all attacks on an adoption decree. Parties have the option of appealing an adoption decree as they do any judgment. Second, in construing laws, we must assume that judges will give effect to the directives of the legislature and will follow the law accordingly and cannot assume that judges will violate the power entrusted to them by the people of this State by engaging in actions that are unauthorized and contrary to our laws. This assumption is vital to the workings of our government and seems especially appropriate when the legislature provides clear principles and directives for judges to follow. In this regard, the legislature has clearly stated throughout the family code that judges are to make decisions that are in the best interests of the children involved.

Finally, we are not confronted with any of the hypothetical situations described by Goodson. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004) (courts prohibited from issuing advisory opinions). There is no allegation that the adoption of K.G. by Castellanos was obtained through fraud or duress. On the contrary, both parties willingly entered this arrangement, and Goodson only attempted to revoke the Bexar County adoption after her relationship with Castellanos ended. Moreover, if an adoption turns out to not be in the best interest of the child, the family code provides methods for terminating the parent-child relationship, *see* Tex. Fam. Code Ann. §§ 161.001-.007 (West 2002 & Supp. 2006), and for the removal of a child from an abusive home, *see id.* §§ 262.001-.307(West 2002 & Supp. 2006).

*Fundamental Error*

Alternatively, Goodson contends that the adoption decree is void because the Bexar County district court committed fundamental error when it issued the adoption decree. Specifically, Goodson contends that the adoption decree violates the public interest of the state of Texas that a child have at most one parent of each sex.

Fundamental error is present when the record shows that "the public interest is directly or adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Texas Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied). However, due to the policy concerns favoring preservation of error during trial or during appeal, the fundamental error doctrine is a discredited doctrine that is used in rare circumstances only. *In re B.L.D.*, 113 S.W.3d at 350. The doctrine has been employed to review issues of jurisdiction and certain types of errors in juvenile delinquency cases. *Id.* The doctrine has not been employed in this area of the law, and we decline the invitation to do so. *Cf. id.* at 351 (refusing to apply fundamental error doctrine to parental-termination cases); *In re R.L.H.*, 771 S.W.2d 697, 702-03 (Tex. App.—Austin 1989, writ denied) (there is no blanket exception for failing to comply with rules of appellate procedure in family law cases that would warrant application of fundamental error doctrine).

To support her argument that it is the public interest of this State that a child have no more than one parent of the same sex, Goodson correctly points out that various provisions of the health and safety code and the family code, including certain provisions in chapter 160 of the family code, use the singular forms of the words "mother" and "father" when describing parents. *See* Tex.

12

Fam. Code Ann. §§ 101.024 (definition of parent), .025 (definition of parent-child relationship), § 160.201 (West 2002) (specifying ways in which mother-child relationship and father-child relationship may be established); Tex. Health & Safety Code Ann. §§ 192.002(c), (d) (birth certificate must have space for social security numbers of mother and father), .008(a) (birth certificate may contain one male and one female adoptive parent). In addition, Goodson refers to section 160.102 of the family code, which states that an "adjudicated father" is "*a* man who has been adjudicated . . . to be the father of a child," and reasons that a similar numerical restriction to one individual must apply to an individual deemed to be the mother of a child. *See* Tex. Fam. Code Ann. § 160.102 (West 2002) (emphasis added); *see also id.* § 160.106 (provisions of chapter relating to determination of paternity also apply to determination of maternity). Drawing from these statutory provisions, Goodson asserts that chapter 160 of the family code articulates an intention on behalf of the legislature that children have only one parent of each sex, and insists that any family code provision that might prohibit the invalidation of an adoption of a child by two members of the same sex, including section 162.012, must yield to the policy articulated in chapter 160. *See id.* § 160.002 (West 2002) (if another provision of family code conflicts with chapter 160, chapter 160 prevails).

However, there is no direct statement of public policy found in the family code or the constitution prohibiting the adoption of a child by two individuals of the same sex. *See T. Brown Constructors, Inc.*, 947 S.W.2d at 659 (fundamental error is present when public interest that is declared in statutes or constitution is directly or adversely affected; judgment was fundamentally erroneous because trial court usurped power of executive and violated separation of powers provision of constitution); *see also* Tex. Const. art. I, § 32 (directly stating that marriage can only

13

consist of one man and one woman). Accordingly, any concern with the propriety of this adoption must yield to the directly stated public policy of this State prohibiting a direct or collateral attack on a judgment more than six months after an adoption is ordered and providing children with a stable home environment. *See* Tex. Fam. Code Ann. §§ 162.012 (six-month deadline); 153.001 (overall public policy of State); *Wristen v. Kosel*, 742 S.W.2d 868, 870 (Tex. App.—Eastland 1987, writ denied) (when both parents love child, public interest is neither directly nor adversely affected by question of which parent is appointed managing conservator of child); *see also Van Stavern*, 2006 Tex. App. LEXIS 9529, at *9-10 (rejecting argument that appointment of both members of same-sex couple as joint managing conservators violated public policy).

Finally, in arguing that the adoption is void, Goodson would have us ignore her role in the adoption of K.G. by Castellanos. Goodson and Castellanos together hired a lawyer for the purpose of making Castellanos a co-equal legal parent of K.G. and filed a joint petition for the adoption of K.G. Importantly, K.G. regards both Goodson and Castellanos as his parents, and the three of them lived as a family for years. It would be inequitable and unconscionable to allow Goodson to invoke the jurisdiction of a court for the sole purpose of creating a parent-child relationship between Castellanos and K.G. and then subsequently allow her to destroy that same relationship because her relationship with Castellanos had ended. *See Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied) (party may not accept benefits of statute and then assert right inconsistent with position previously taken for purpose of avoiding corresponding effects or obligations); *Marshall v. Lockhead*, 245 S.W.2d 307, 308 (Tex. Civ. App.—Waco 1952, writ ref'd n.r.e.) (one who accepts and retains fruits of judgment is estopped

14

from later asserting its invalidity); *see also V.C. v. M.J.B.*, 748 A.2d 539, 552 (N.J. 2000) (parent has "absolute ability to maintain a zone of autonomous privacy for herself and her child. However, if she wishes to maintain that zone of privacy she cannot invite a third party to function as a parent to her child and cannot cede over to that party parental authority the exercise of which may create a profound bond with the child"). Utilization of the court for this type of behavior is not something we will allow.

For all the reasons previously given, we conclude that the adoption decree is not void and that the time for attacking the validity of the adoption has passed.[7]

---

[7] In her first issue, Goodson also contends that, because the Kazakstan adoption order was a full and final judgment, the adoption afforded her the status of K.G.'s mother, including all the rights and responsibilities attendant with that status, and, therefore, Castellanos was precluded from being awarded any parental rights by the doctrine of res judicata. *See* Tex. Fam. Code Ann. § 162.023(a) (West Supp. 2006) (adoption order issued by foreign country is "accorded full faith and credit by" Texas courts as long as order does not violate "fundamental principles of human rights or the laws or public policy of this state"); *see also id.* § 152.105(a) (court shall treat foreign country as if it were state within United States), (b) (West 2002) (custody determinations made by foreign county in substantial conformity with requirements of family code will be recognized in Texas).

However, because we have concluded that the time for contesting the Bexar County adoption has expired, we need not address this sub-issue. Further, we note that, if applicable, the proper place to have raised this defense would have been during the Bexar County adoption proceeding. *See* Tex. R. Civ. P. 94 (res judicata is affirmative defense that must be pleaded to be effective); *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. filed) (if not pleaded, affirmative defense is waived). The record contains no indication that Goodson raised this defense during that proceeding, and, indeed, both parties were represented by the same attorney and jointly filed the petition for adoption.

15

*Standing*

Finally, in her first issue, Goodson also argues that Castellanos had no standing to file a suit affecting the parent-child relationship. In her petition, Castellanos asserted that she had standing to file suit because she was a parent of K.G. However, Goodson asserts that Castellanos could not demonstrate that she had standing to file this suit because the Bexar County adoption decree is void.

However, we have already concluded that the Bexar County adoption decree is not void, and, therefore, both Goodson and Castellanos possess parental rights to K.G. Accordingly, Castellanos had standing to file this suit. *See* Tex. Fam. Code Ann. § 102.003(a) (West 2002 & Supp. 2006) (specifying which parties may file suit affecting parent-child relationship). Moreover, section 102.003 of the family code confers standing to any person who has had "actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *Id.* § 102.003(a)(9). As noted by the district court, it is undisputed that both parties had "actual care, custody, control and possession of [K.G.] for more than six months (18 months from October 2000 to April 2002) and that period ended less than 90 days before the filing" of the suit. *See Van Stavern*, 2006 Tex. App. LEXIS 9529, at *6 (county court order created parent-child relationship between same-sex adoptive parent and child, and, thus, parent had standing in suit affecting parent child relationship).

For all the reasons previously discussed, we overrule Goodson's first issue in its entirety.

16

**Parental Presumption and Constitutional Right**

In her second and third issues on appeal, Goodson contends that the district court erred in appointing Castellanos as the sole managing conservator because Goodson is entitled to the presumption favoring parents over non-parents in the appointment of managing conservators and because she has a constitutional right to make decisions concerning the care, custody, and control of K.G. without unwarranted governmental interference. *See* Tex. Fam. Code Ann. § 153.131(a) (West 2002) (unless court finds that it is not in best interest of child, court shall appoint parent as managing conservator); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality) (liberty interest of parents in care, custody, and control of their children is perhaps oldest of fundamental rights); *In re M.W.*, 959 S.W.2d 661, 665 (Tex. App.—Tyler 1997, writ denied) (right of parent to raise child is essential right). Specifically, she asserts that, because the Bexar County adoption is void, she is K.G.'s only parent. As such, she argues that she should have been appointed the sole managing conservator of K.G. and should not have been required to pay child support. Further, she argues that the district court erred when it limited her possession of K.G. to the "standard possession" described in the family code. *See* Tex. Fam. Code Ann. §§ 153.311-153.317 (standard possession).

However, as discussed previously, we have concluded that the Bexar County adoption is not void. Consequently, this case does not constitute a suit by a non-parent against a parent for custody of a child; rather, this case is a suit affecting the parent-child relationship between two individuals with co-equal legal rights to a child. Accordingly, Goodson is not entitled to a presumption that Castellanos is not also entitled to. Moreover, although Goodson contends that the district court erred by appointing a non-parent as the sole managing conseravtor of K.G., she

17

premises this argument solely on her assertion that Castenellos's adoption of K.G. was invalid and does not assert that there is no evidentiary support for the appointment of Castenellos, as a parent, as the sole managing conservator.

Because the suit involves two parties with equal parental claims, the court was authorized to award sole conservatorship to Castellanos, *see id.* § 153.005 (West 2002) (court may appoint one sole managing conservator or joint managing conservators); to issue a standard possession order awarding Goodson standard possession, *see id.* §§ 153.251(d) (standard possession order applies to children three years of age or older), .252 (West 2002) (rebuttable presumption exists that standard possession order is in best interests of child), .311-.317 (standard possession order); and to require Goodson to make child support payments and provide health insurance for K.G., *see id.* § 154.001 (West 2002 & Supp. 2006) (authorizing court to order either parent or both parents to make child support payments), §§ 154.182-.183 (West 2002) (allowing court to order parent to pay for or provide health insurance for child). Accordingly, we overrule these issues.

**Evidence Against Castellanos's Brother**

In her fourth and fifth issues on appeal, Goodson argues that the district court abused its discretion when it ruled that evidence regarding Castellanos's brother, Anthony Castellanos, could not be admitted. Specifically, Goodson argues that the district court should have admitted evidence demonstrating that Anthony is a registered sex offender and that Anthony had contact with K.G. She argues that this evidence was relevant to the determination of whether Castellanos was an effective

18

parent. In its temporary and final orders, the district court prohibited Castellanos from allowing K.G. to have any contact with Anthony.

The rules of evidence govern the admissibility of evidence. Under rule 401, evidence is "relevant" if it has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Subject to a few exceptions, relevant evidence is admissible but "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* R. 402, 403. Evidence that is not relevant is not admissible. *Id.* R. 402.

We review a trial court's decision to either admit or exclude evidence for an abuse of discretion. *In re J.P.B.,* 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 254 (Tex. 1995). In deciding whether evidence should be excluded, the court must weigh the probative value of the evidence against "its potential for unfair prejudice or confusion" and must examine the necessity and probative effect of the evidence. *In re C.J.F.*, 134 S.W.3d at 356. Because the guiding principle in a suit affecting the parent-child relationship is the best interest of the child, the exclusion of evidence under rule 403 should be done "sparingly." *In re J.W.*, 113 S.W.3d 605, 612 (Tex. App.—Dallas 2003, pet. denied).

In explaining its ruling, the district court stated:

> [C]onsidering the relevance and prejudicial value, I am at this time going to rule that it has very, very little relevance with respect to the issues the jury is going to decide.

19

It is highly prejudicial. It is the sort of thing that average citizens have a hysterical reaction to. . . . I do think it has a high level of prejudicial value for virtually no relevance.

In the temporary orders hearing, Goodson testified that, early on in their relationship, Castellanos informed her that Anthony was a registered sex offender. Further, Goodson stated that, after being informed of Anthony's status as a registered sex offender, she did not want Anthony to have any access to K.G. and believed that was Castellanos's desire as well. However, she testified that, a few months prior to the hearing, she learned that Castellanos had taken K.G. to a family reunion and that Anthony had attended the event. Goodson also stated that when she asked Castellanos about the visit, Castellanos replied, "Oh, don't worry about it. Anthony is ok now. He has changed." In addition, Goodson testified that, after the visit, K.G. began displaying uncharacteristic behaviors that she believed were consistent with sexual abuse. She stated that K.G. reached for her genital area twice and moved his face close to her genital area on more than one occasion.[8] Although Goodson was prohibited from discussing Anthony during trial, she did testify that she believed that K.G. had been sexually abused. Further, she stated that K.G. began exhibiting symptoms she believed were consistent with sexual abuse, including extreme mood swings, excessive crying, withdrawal, bed-wetting, nightmares, fear of going to bed, and rashes in his genital area.[9]

---

[8] Goodson also testified that K.G. stopped these behaviors within a few days of her talking to him.

[9] No medical evidence was introduced concerning the alleged rashes, and one of K.G.'s pediatricians testified that it is not necessarily unusual for a child to have a rash similar to the one described by Goodson.

Castellanos also testified during the temporary orders hearing and stated that she has not and would never let K.G. be alone with Anthony. Further, she testified that the only time K.G. has ever been in the same place as Anthony was during Castellanos's parents' anniversary dinner. Additionally, she stated that the dinner was at a public restaurant, that all members of her immediate family attended the event, that the event only lasted a couple of hours, that K.G. was with her for the whole event, and that K.G. was never alone with Anthony.

In subsequent hearings and during bench conferences at trial, Goodson also argued that there was a possibility that K.G. had gone fishing with Anthony after the temporary orders prohibiting contact with Anthony were issued. However, Goodson failed to present any evidence substantiating this claim. When asked about this possibility at trial, the amicus attorney stated that he had no indication that K.G. had been allowed near Anthony after the temporary orders issued. Further, Goodson's attorney admitted in the conference that K.G. told the amicus attorney that he "*didn't* go fishing with Uncle — with Uncle Anthony." (Emphasis added). Finally, Castellanos's attorney argued that, when K.G. was discussing the fishing trip with "Anthony," he was referring to a school friend named Anthony, not his uncle.

Given Castellanos's testimony, we cannot conclude that the district court abused its discretion when it initially concluded that the potential for unfair prejudice that could result from admitting the contested evidence substantially outweighed the little probative value the evidence offered. The only evidence offered indicates that the family gathering occurred in a public place and was attended by several members of Castellanos's family and that K.G. was never alone with Anthony. Accordingly, the district court could reasonably conclude that the evidence had little

21

probative value for evaluating Castellanos's ability to act as an effective parent for K.G. In addition, people often have an understandably emotional reaction to the suggestion that a registered sex offender was allowed near a child. Accordingly, the district court could have reasonably concluded that this instinctual reaction may have been inappropriately primed by the mere mention of the fact that Anthony was a registered sex offender and concluded that, under the circumstances present in this case, admission of the evidence in question would have unfairly prejudiced Castellanos. In addition, given that no evidence was proffered to substantiate the claim that K.G. had gone fishing with Anthony and given the admission that K.G. stated he did not go fishing with his uncle, we cannot conclude that the district court abused its discretion when it reaffirmed its original ruling prohibiting the introduction of evidence regarding Anthony.

Moreover, prior to trial, Goodson and Castellanos agreed to allow K.G. to undergo a psychological evaluation by Dr. Poole. In his report, Dr. Poole noted that, despite being advised by Goodson that she believed K.G. had been sexually abused, he found no evidence that any of K.G.'s behavioral problems were the result of physical or sexual abuse. During trial, Dr. Poole reiterated his conclusion and stated that, despite Goodson's concerns, he believed K.G. should reside with Castellanos.

Based on all the preceding evidence, we cannot conclude that the district court's actions were without regard to guiding rules or principles. Therefore, we conclude that the district court did not abuse its discretion and overrule Goodson's fourth and fifth issues on appeal.


**Child Support**

In her sixth issue on appeal, Goodson argues that the district court abused its discretion in ordering her to pay child support because she is K.G.'s only parent. We have already

addressed this contention and concluded that the district court was authorized to order Goodson to pay child support. Therefore, we conclude that the district court did not abuse its discretion and overrule this issue on appeal.

Alternatively, in her seventh issue, Goodson argues that there is legally and factually insufficient evidence to support the amount of child support ordered by the district court. In its temporary and final orders, the district court required Goodson to pay Castellanos $788.00 per month in child support and to provide health insurance for K.G. Although Goodson admits that the child support ordered in the temporary order was consistent with her income for 2001, she insists that the final order was improper and excessive because her annual income was much less in 2002 than it was in 2001.

Courts have the discretion to determine the appropriate amount of child support, and we will not disturb the trial court's conclusion unless it is shown that the district court abused that discretion. *In re L.R.P.*, 98 S.W.3d 312, 313 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). Under this standard of review, the factual and legal sufficiency of the evidence are not independent grounds for appeal but are relevant considerations when determining whether the trial court abused its discretion. *Id.*; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review"); *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 548 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (evidence is factually insufficient if court's ruling "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust"). As long as the court's determination is supported by evidence of a "substantive and probative character," the court did not abuse its discretion. *Sanchez v. Sanchez*, 915 S.W.2d 99, 102 (Tex. App.—San Antonio 1996, no writ).

Goodson argues that the amount of child support ordered is improper because her financial situation changed between the time the court first ordered her to pay child support in its temporary order and the court's final judgment. At trial, Goodson testified concerning her income in 2001 and in 2002. Her earnings in 2001 were over $65,000. Based on this income, she admits that the amount of child support originally ordered, $788.00 per month, was appropriate when the court issued its temporary orders.

However, Goodson contends that, in 2002, she had a significantly reduced income. At trial, she testified that she was laid off from her job in the computer industry and that she was unable to obtain another job in the computer industry. Further, she testified that her annual income in 2002 was approximately $30,000. Finally, she stated that, due to a downturn in the market, it was difficult to get a job in the high-tech industry and that it was her belief that, even if she were employed full-time, she would only make between $30,000 and $40,000 per year.

Based on this testimony, Goodson insists that the amount of child support ordered is impermissibly high under the family code. In determining the proper amount of child support, courts are to consider (1) all of the parent's salary income; (2) interest, dividends, and royalty income; (3) self-employment income; (4) rental income; and (5) all other income the parent receives. Tex. Fam. Code Ann. § 154.062 (West 2002). Based on her testimony regarding her actual income, she insists that her monthly child support payment is over $350 too high. *See* Tex. Fam. Code Ann. §§ 154.061 (West Supp. 2006) (chart for calculating net monthly income after taxation), .125 (West 2002) (child support guidelines state that, for one child, child support monthly obligation is 20% of net resources). Alternatively, she insists that, even if the amount awarded was based on the amount of money she stated she could potentially earn as a full-time employee ($40,000 a year), the amount awarded was more than $200 too high. *See id.* §§ 154.061, .125.

24

Goodson's arguments ignore the fact that the duty to pay child support is not limited to the parent's ability to pay from current earnings, and the court may consider all sources that might be used to pay child support. *See In re S.B.C.*, 952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no pet.) (it was proper for court to consider equity person had in his home when ordering child support). The family code specifies that, in determining a parent's resources, the court may, when appropriate, "assign a reasonable amount of deemed income attributable to assets that do not currently produce income." Tex. Fam. Code Ann. § 154.068 (West 2002). In addition, courts must also consider "whether certain property that is not producing income can be liquidated without an unreasonable financial sacrifice." *Id.*

In addition to testimony regarding her earnings, Goodson also testified regarding various investments and real estate she possessed and regarding two companies she started or planned on starting. First, she testified that, although she did not expect to make any money from them in 2002, she had opened a horse-breeding company and was planning on starting her own internet company. Next, she stated that she had received stocks worth over $500,000 from a previous job but further specified that she had already sold the stock, paid taxes on the sale, used part of the money to travel to Kazakstan, and spent $240,000 to purchase property, build a house, and set up her horse-breeding company. Finally, she related that she had another home, which she was going to sell in the near future. The court could have considered these assets, in addition to her earnings, when it made its child support determination and determined that the remainder of the proceeds from the sale of her stock and deemed income from her second home or potential value from a sale of the home supported the amount of child support awarded. *See id.*

Finally, it should be noted that, other than her 2001 tax return, her testimony regarding her estimations for her income, and her assertions regarding various purchases she made, Goodson provided little evidence regarding her financial status. She failed to show how much money remained from the sale of her stock, how much money she had in savings or investments, or the amount of equity she possessed in her second home. Moreover, Goodson failed to demonstrate what the value of her horse-breeding company was or what potential profits she anticipated making in the future.

Given that evidence was introduced indicating that Goodson possessed sizeable financial assets, the district court's decision not to alter the child support award from its previous determination is not unreasonable or arbitrary and is not, therefore, an abuse of discretion. Accordingly, we overrule Goodson's seventh issue on appeal.

**Attorney's Fees to Amicus**

In her eighth and ninth issues on appeal, Goodson argues that the district court abused its discretion when it ordered her to pay attorney's fees to Walsh for legal services he provided as an amicus attorney and that there is legally and factually insufficient evidence to support the $5,035.50 award. In general, we review a trial court's decision to award attorney's fees for an abuse of discretion, and if a fee is awarded, we determine whether the fee is supported by sufficient evidence. *See Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 262 (Tex. App.—Austin 2002, pet. abated); *Hunt v. Baldwin*, 68 S.W.3d 117, 135 n.8 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

This case was originally filed in 2002, and Walsh was appointed as an "amicus attorney" in August 2003.[10] The relevant family code provision in effect during the time of the appointment specified that appointed attorneys were "entitled to" reasonable attorney's fees. Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 15, sec. 107.015, 1995 Tex. Gen. Laws 3888, 3894.[11] Because this statute stated that the attorney was entitled to attorney's fees, the statute was not discretionary. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).

Although the award of attorney's fees was mandatory under the previous family code provision, the amount awarded still had to be supported by evidence. *Cf. Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (party must prove that fees are reasonable); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 852 (Tex. 2000) (generally, attorney's fees must be supported by evidence); *In re R.D.Y.*, 51 S.W.3d 314, 325 (Tex.

---

[10] The family code provisions in effect at the time of the appointment authorized the court to appoint an "ad litem attorney" but made no specific reference to an "amicus attorney." *See* Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 15, secs. 107.011-.012, 1995 Tex. Gen. Laws 3888, 3894. Although not directly mentioned in prior provisions, the family code now makes a distinction between the two types of attorneys and allows a court to appoint either type of attorney in a family law case. *See* Tex. Fam. Code Ann. §§ 107.003-.004, .021 (West Supp. 2006). Under the current provisions of the family code, an amicus attorney is defined as "an attorney appointed by the court . . . whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than provide legal services to the child," while an attorney ad litem is defined as "an attorney who provides legal services to a person, including a child" and owes the person the duty of undivided loyalty and competent representation. *Id.* § 107.001 (West Supp. 2006). Both types of attorneys are given the same representational powers and duties, *see id.* § 107.003, but an attorney ad litem has additional duties, including providing legal advice for the child and following the child's directives, *see id.* § 107.004.

[11] The current version of the family code mandates an award of reasonable attorney's fees for both attorneys ad litem and amicus attorneys. *See* Tex. Fam. Code Ann. §§ 107.015, .023 (West Supp. 2006).

App.—Houston [1st Dist.] 2001, pet. denied) (attorney's fee award must be supported by competent evidence). The supreme court has identified eight factors that a fact-finder may consider when determining what a reasonable amount of attorney's fees should be: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 818 (Tex. 1997).

The only evidence concerning attorney's fees for the amicus appears in two letters sent by Walsh to the district court. The first letter was sent in early February 2004. In that letter, Walsh stated that the total amount of attorney's fees he was owed was $11,835.50. He further specified that he had already been paid $10,000 of that fee by Goodson and Castellanos, leaving a balance of $1,835.50. In addition, Walsh wrote that his billing rate was $250 per hour but that, in an effort to save the parties money, he was only billing the parties $200 per hour for services performed after the jury trial began. Finally, the letter stated that the proposed figure was only a preliminary estimate and did not include charges for legal services that will be performed in the future. Attached to the letter was an invoice specifying the various services he had performed, the

28

amount of time spent on each service, and the corresponding charge for the service. Later that month, Walsh sent another letter to the court stating that his final bill for attorney's fees not previously paid was $5,035.50, and the district court ordered Goodson to pay the amount requested. No testimony was presented at trial concerning Walsh's attorney's fees, and no evidence other than the two letters summarized above was presented to the court. *Cf. Garcia v. Martinez*, 988 S.W.2d 219 (Tex. 1999) (guardian ad litem testified about number of hours worked, hourly fee, etc.); *In re R.D.Y.*, 51 S.W.3d at 325 (court could reasonably infer from testimony and list of attorney's services provided that dollar figure suggested by attorney was reasonable). Although the original letter provided an invoice for services rendered up to the date specified in the letter, no similar invoice was provided concerning the services provided from early February to the end of February explaining the increase in fees owed from $1,835.50 to $5,035.50. In addition, no evidence concerning any of the eight factors listed in *Andersen* was provided concerning the increase in attorney's fees. Further, none of the evidence provided to the district court was given in the form of a sworn statement. *See Banda v. Garcia by Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (normally, attorney's statements must be sworn to be considered evidence).

In light of the lack of evidence regarding attorney's fees, we conclude that the award of attorney's fees was not supported by sufficient evidence. Accordingly, we sustain Goodson's issue on appeal and remand the case for further proceedings consistent with this opinion. *See In re A.M.*, 974 S.W.2d 857, 865 (Tex. App.—San Antonio 1998, no pet.) (although family code specifies that attorney ad litem is entitled to fees, court remanded case for determination of reasonable attorney's fees: no evidence was offered supporting attorney ad litem's fees and ad litem's statement

29

in court about number of hours worked was unsworn); *see also Bocquet v. Herring*, 972 S.W.2d 19, 21-22 (Tex. 1998) (if court finds evidence of attorney's fees insufficient, it may remand for further proceedings); *Woollett v. Matyastik*, 23 S.W.3d 48, 53 (Tex. App.—Austin 2000, pet. denied) (appellate court remanded case because request for attorney's fees was not supported by affidavit or evidence).

**Attorney's Fees to Castellanos**

In her final issue on appeal, Goodson argues that the district court abused its discretion in ordering Goodson to pay attorney's fees to Castellanos. The district court's order stated:

> IT IS ORDERED that good cause exists to award [Castellanos] a judgment of $45,854.41 for legal services through trial of this case rendered in relation to the child and in the nature of child support, with interest at 10 percent per year compounded annually from the date the judgment is signed until paid.

First, Goodson argues that, because the Bexar County adoption decree is void, she should have been appointed as K.G.'s sole managing conservator and, therefore, should not have been ordered to pay attorney's fees. However, as discussed previously, we have concluded that the Bexar County adoption is not void and that the district court was authorized to appoint Castellanos as the sole managing conservator.

Alternatively, Goodson asserts that there is no statutory authority allowing a court to award attorney's fees "in the nature of child support." *See Finley v. May*, 154 S.W.3d 196, 199 (Tex. App.—Austin 2004, no pet.) (concluding that trial court erred in awarding attorney's fees "in the

nature of child support" and modifying judgment accordingly); *see also Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996) (attorney's fees may not be recovered from opposing party unless recovery is provided for by statute or by contract between parties). Finally, Goodson argues that the district court abused its discretion when it ordered postjudgment interest of 10 % per year. Specifically, she asserts that the finance code required a postjudgment rate of 5 %. *See* Tex. Fin. Code Ann. §§ 304.003 (specifying post judgment interest rate), .004 (West 2006) (specifying that postjudgment interest rate will be published in Texas Register).

However, to make these claims on appeal, Goodson was required to present these complaints to the trial court. *See* Tex. R. App. P. 33.1 (preserving error); *see also Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (error regarding postjudgment interest is waived if not complained of at trial level); *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Communications Corp.*, 49 S.W.3d 520, 534 (Tex. App.—Corpus Christi 2001, pet. denied) (error regarding attorney's fees is waived if not presented to trial court). After reviewing the record, we can find no motion or objection regarding the manner in which the attorney's fees were awarded or regarding the postjudgment interest figure used. Accordingly, we conclude that Goodson failed to preserve this complaint for appeal and overrule this issue.

**CONCLUSION**

Because we have concluded that (1) the adoption decree is not void, (2) the time to attack the decree has passed, (3) Goodson was not entitled to a parental presumption over Castellanos, (4) the district court did not improperly violate Goodson's right to the care of her child

31

by appointing a nonparent as the sole managing conservator of K.G., (5) the district court did not abuse its discretion by excluding evidence concerning Castellanos's brother or by ordering Goodson to pay child support, (6) the district court did not err in the amount of child support ordered, and (7) Goodson failed to preserve her complaint concerning the manner in which the attorney's fees were ordered or the amount of postjudgment interest ordered, we affirm the portion of the district court's judgment appointing Castellanos as sole managing conservator and Goodson as possessory conservator and requiring Goodson to pay child support and attorney's fees to Castellanos. However, because we concluded that the amount of attorney's fees ordered to be paid to the amicus attorney was not supported by sufficient evidence, we reverse and remand this case for further proceedings consistent with this opinion.

David Puryear, Justice

Before Chief Justice Law and Justices Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   January 19, 2007