# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00275-CV

**Jorge Monroy , Appellant**

**v.**

**Perla X. Monroy, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-FM-09-004901, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Jorge Monroy appeals the district court's judgment in this divorce and suit affecting the parent-child relationship. He contends that the court's division of the marital estate was not just and right and that the court erred by ordering him to pay child support, both prospective and retroactive, while he was incarcerated and not receiving income. We will affirm the judgment.

## BACKGROUND

At the trial, only Perla X. Monroy and her attorney testified. Jorge[1] represented himself and did not testify, call or cross-examine witnesses, or present argument. The following summary is drawn from the limited facts in Perla's testimony. She and Jorge were married in September 1999. Jorge built fences and earned an estimated $3,000 per month when they were

---

[1] Because the parties shared a last name at trial, we will use their first names for clarity.

together. She gave birth to a child in both 2002 and 2007, and the younger child had surgery at six months of age that cost $8,000. The couple separated on or about April 1, 2008. During the separation, Jorge followed Perla around and showed up unannounced. On one occasion, he took the memory card from her camera and got into a shoving match with her while she held their younger daughter. In early September 2009, the Monroys sold some real estate, with each spouse getting $37,000.

Jorge's behavior led Perla to seek protection from the courts. She filed a petition for divorce on September 11, 2009, accompanied by an affidavit detailing a series of incidents with Jorge that occurred in August 2009. The trial court granted a temporary restraining order designed to keep Jorge from coming within 200 yards of her house.

Perla testified that on the evening of September 11, 2009, Jorge broke into her house and attacked her and her boyfriend with a hammer. He hit the boyfriend in the face, took some pictures, then hit her on the back of the head during the ensuing struggle. Her head wound required seven staples, and she missed a week of school and work.

Perla obtained a temporary ex parte protective order based on Jorge's commission of family violence. Jorge was later arrested and jailed. He asserts that he has posted approximately $570,000 in various bonds. The temporary protective order was extended on October 15, 2009. The divorce was granted on November 5, 2009. The court signed a protective order on January 27, 2010, and signed the divorce decree, specifying that the marriage was dissolved on the ground of cruelty, on January 28, 2010. The court awarded $7,500 in attorney's fees payable by Jorge directly to Perla's attorney.

2

**DISCUSSION**

On appeal, Jorge contends that the trial court erred in two ways. He contends that the division of the marital estate was not just and right. He also contends that the trial court erred in ordering him to pay $618 in monthly child support and $10,506 in retroactive child support because he was in jail and not earning income. He argues that the award of attorney's fees was not supported by the pleadings or evidence.

**The division of property**

We review a division of the marital estate for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court is charged with dividing the estate of the parties in a just and right manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001 (Tex. 2006). The court need not divide community property equally. *Murff*, 615 S.W.2d at 699. The trial court may consider many factors, including the parties' earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Id.*

In granting the divorce, the court for the most part solemnized the division of property the Monroys had effectuated during their separation. The court awarded each party the furniture, furnishings, personal items, and sums of cash in his or her possession or subject to his or her respective control. The court also awarded each party his or her individual retirement savings, as well as the debts he or she incurred individually after the date of separation. In addition, the court ordered Jorge to reimburse Perla $4,000 for his share of their daughter's medical expenses. The

3

court also awarded Perla the automobile in her possession purchased with the proceeds from an insurance payout from a collision that damaged a 2000 Toyota Tundra. The court further awarded Perla a 2007 Chevrolet Silverado pickup then in the possession of Jorge or his family, as well as the remaining debt on that vehicle.

Jorge complains about procedures used in the trial court. He complains that the trial happened in an accelerated fashion while he was in jail and that no discovery occurred. He asserts that Perla requested a just and right division, not a disproportionate one. He contends that she did not seek attorney's fees nor request an award specifically in favor of her attorney. These contentions do not require that we alter the judgment. The trial was accelerated because Jorge's attack on Perla permitted the case to proceed without the typical 60-day waiting period. *See* Tex. Fam. Code Ann. § 6.702 (West Supp. 2010). The absence of discovery is not, without more, reversible error. Discovery is permitted, but not required by the rules. Jorge does not allege, much less prove, that the trial court improperly denied any proper discovery request or, for that matter, that he made a discovery request. The division of property is not reversible simply because it may be unequal. *See Murff*, 615 S.W.2d at 698-99. Finally, although Perla did not specifically plead for attorney's fees in her petition for divorce, she did in her application for protective order. In the application, she specifically requested that a judgment for attorney's fees be rendered in favor of her attorney.

Jorge complains specifically about three items in the property division: (1) the award to Perla of the Silverado pickup, especially without evidence of its value or the amount of the remaining debt; (2) the award to her of an unspecified vehicle based on an insurance payout related to a damaged vehicle not mentioned at trial; and (3) the order that Jorge reimburse Perla for $4,000

4

of their child's medical bill, the existence of which was not supported by documentation. For each item, to varying degrees, Jorge complains that there is no evidence of value.

The lack of evidence of value of property in the trial court record does not require reversal in a contested case. Each party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *Id.* at 509; *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). An appellant who does not provide property values to the trial court cannot complain on appeal of the trial court's lack of complete information. *Todd v. Todd*, 173 S.W.3d 126, 129 (Tex. App.—Fort Worth 2005, pet. denied); *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 (Tex. App.—Austin 1994, no pet.). A party complaining of a property division "must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion." *Finch*, 825 S.W.2d at 221; *see also Magill v. Magill*, 816 S.W.2d 530, 534 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("Without recorded property values and factual findings, we presume that the trial court properly considered the entire circumstances of the parties and correctly exercised its discretion in dividing their property.").

First we note that, contrary to Jorge's assertion that he "got nothing in terms of property," the trial court awarded him all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry, personal effects, and cash in his possession or subject to his sole control, as well as monetary deposits in his name and retirement benefits accrued due to his employment. We do not know the value of these assets, nor do we know the value of similar awards to Perla, because neither party offered evidence of their value. This is

5

a barrier to Jorge's quest to prove that the division of property was unequal, much less whether it was unjust and wrong.

The only community assets specifically named were awarded to Perla—the 2007 Chevrolet Silverado and the vehicle bought with proceeds from the insurance payout from a collision that damaged her 2000 Toyota Tundra. Other than Perla's testimony that the monthly payments on the loan for the 2007 Chevy truck were $982, there is no evidence about the value of either vehicle. Although Jorge complained in his motion for new trial about the award of the Chevy to Perla for which she had "not paid a penny," he did not present any evidence regarding any equity he had accrued by paying on the note. There was no mention at trial of the existence of the 2000 Toyota Tundra, an insurance payout for a collision involving it, or a replacement vehicle. These appeared for the first time in the divorce decree. The disposition of the Toyota in the decree, however, distinguishes this case from those in which a party withholds information about an asset and keeps it without it being distributed in the decree. Jorge's mention of the Toyota in his motion for new trial demonstrate both his awareness and his notification of the trial court that it had distributed an asset that Perla failed to disclose during trial.[2] Jorge nevertheless presented no evidence of the Toyota's value. The trial court, thus informed of the previously unmentioned asset's distribution, declined to alter the distribution of the community estate. While the unexplained debut of an asset in the judgment is less than ideal, we have no evidence regarding its value or the value

---

[2] We note that Jorge does not assert that *he* did not know that Perla owned a vehicle that was community property, only that she did not disclose it to the court during trial.

6

of other property, and no real basis on which to assess its impact on the justness and rightness of the division of the community estate.

With regard to community liabilities, the court awarded the remaining debt on the Chevy Silverado to Perla and ordered Jorge to reimburse Perla for half of their child's $8,000 medical bill. Otherwise, the parties were awarded debts they accrued following their separation. Although there is no evidence of the amount owed on the Chevy (other than Perla's testimony that payments are $982 per month), there is evidence of the value of the medical bill—Perla's testimony. Jorge's choice not to cross-examine her or present his own evidence on the issue leaves her testimony undisputed and controlling on the amount owed and paid.[3]

The absence of evidence of values of community assets and debts distributed renders an assessment of that distribution speculative and essentially meaningless. Jorge complains that Perla received two vehicles (offset somewhat by the remaining loan balance on one) and he received none, pointing to this fact as evidence of an unequal division of assets expressly awarded. The record provides no way of knowing, however, if that automobile inequality is offset by the award of other unspecified assets in their respective possession and/or the award of the remaining automobile-related and personal debt. We conclude that Jorge has not demonstrated that the record presented in this appeal shows that the trial court abused its discretion when dividing the community estate.[4]

_____

[3] Although the trial court ordered Jorge to reimburse Perla $4,000 without also expressly assigning the $8,000 debt itself, Jorge does not complain of the court's failure to specifically assign the debt owed to the hospital.

[4] We reach this conclusion irrespective of the propriety of the finding of cruelty by Jorge toward Perla, thereby rendering moot Jorge's complaint that, because Perla did not plead cruelty, the trial court erred by finding it.

**Child support**

Jorge contends that the trial court erred by ordering him to pay child support at $618 per month and retroactive child support of $10,506 because he was in jail and not actually receiving income at the time of the award. The court ordered him to pay the accrued support at $1,751 per month. Generally, we review the trial court's award of child support for abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In child support decisions, the paramount guiding principle of the trial court should always be the best interest of the child. *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011) (citing *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993)).

The legislature has established guidelines for the award of child support, and application of these guidelines is rebuttably presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 154.122 (West 2008). Under the guidelines, trial courts determine the appropriate level of support based on net resources available, which include the following:

> (1) 100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);
>
> (2) interest, dividends, and royalty income;
>
> (3) self-employment income;
>
> (4) net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation); and

(5) all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits other than supplemental security income, unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.

Tex. Fam. Code Ann. § 154.062(b) (West Supp. 2010). Courts must require parties to provide this information to the court. *Id.* § 154.063 (West 2008). In the absence of evidence of wage and salary income, courts must presume that the party has wages or salary equal to the federal minimum wage for a 40-hour week. *Id*. § 154.068. Incarceration alone does not rebut the minimum-wage presumption, and there is no legal presumption that an inmate has no assets. *In re M.M.*, 980 S.W.2d 699, 700-01 (Tex. App.—San Antonio 1998, no pet.). Courts consider these resources, then deduct certain expenses to determine the net resources available. *See* Tex. Fam. Code Ann. §§ 154.061-.062 (West 2008 & Supp. 2010). In determining whether application of the guidelines would be unjust and inappropriate, the court must consider several issues, including "any financial resources available for the support of the child." *See id.* § 154.123(b) (West 2008). The guidelines set a percentage of monthly net resources that should be devoted to child support depending on the number of children. *Id*. § 154.125 (West Supp. 2010). Under the guidelines, an obligor should provide 25% of his net resources to support his two children. *Id*.

The trial court necessarily based its child-support determination on Perla's testimony because Jorge declined to provide any testimony or evidence. Perla testified that she believed Jorge earned $3,000 per month. She also testified that she and Jorge had sold some real estate in September 2009 and that each had received a check for $37,000. Although the trial court did not expressly state the basis for its calculation of child support, we note that the award conforms to the

9

guidelines for an employed person who earns $3,000 monthly and has two children. *See* Tex. Fam. Code Ann. §§ 154.061 (employed persons 2010 tax chart) (West Supp. 2010), & .125 (guidelines for person with two children). Under the 2010 statutory chart, the net monthly income for an employed person paid $3,000 monthly is $2,472.27, and 25% of that is $618.07. Such application of the guidelines to the evidence is rebuttably presumed to be both reasonable and in the children's best interest. *See* Tex. Fam. Code Ann. § 154.122.

Jorge argues that the award is erroneous because there was no persuasive evidence that he had any income. He contends that Perla's testimony about his former income was uncertain at best and that there is no documentation in the record supporting her testimony about the alleged amount of his former income or about the proceeds from the alleged sale of real estate. He states that there is no showing that he has any income or any ability to earn income as a fence builder or otherwise while in jail. He contends that, with no proof of current income being received, the trial court should have used the minimum wage presumption to calculate his child support.[5]

We conclude that the trial court did not abuse its discretion by making the child support award based on the evidence before it. Perla's testimony that Jorge made $3,000 per month and had been paid $37,000 for a real estate sale two months previously was undisputed. Jorge was in court and did not cross examine her or present any evidence regarding his past or present income. Although Jorge undisputedly was in jail at the time of the trial, there is no evidence

---

[5] Although the record is silent as to the amount, we note that the federal minimum wage was $7.25 per hour in November 2010. The statutory chart lists $1,112.79 as the net monthly wage for a person earning the federal minimum wage. *See* Tex. Fam. Code Ann. § 154.061 (West Supp. 2010). Twenty-five percent of that total is $278.20.

10

about exactly how long he had been or would be in jail, nor is there any evidence that he had exhausted the $37,000 or any other assets that could be considered as "financial resources available for the support of the child" under family code section 154.123(b). The court set child support based on the only evidence in the record about Jorge's income and his ability to pay that amount from his present assets. We find no abuse of discretion in the trial court's determination that Jorge would serve the children's best interest by providing them with $618 monthly in child support, and that at the time of the hearing he had the financial resources to provide that support for his children.

Similarly, the trial court did not abuse its discretion by awarding $10,506 in retroactive child support from May 1, 2008. Courts must use the child-support guidelines in determining whether retroactive support is warranted. Tex. Fam. Code Ann. § 154.131 (West 2008). Courts must consider the obligor's resources during the relevant time frame. *Id.* § 154.131(a). The court must further consider issues such as whether an award of retroactive support might impose an undue financial hardship on the obligor. *Id.* § 154.131(b)(3). The court must also consider whether the obligor has provided actual support. The evidence of Jorge's monthly income set out above is also relevant to this issue. Perla also testified that Jorge had provided $300 total in child support during the separation. Jorge did not testify, but attached to his motion for new trial carbon copies of checks to Perla totaling $1,000. The checks do not state the purpose for which they were paid, and the trial court was not required to find that these payments were for child support. (The trial court may, however, have accounted for some of these payments by making the obligation begin on May 1, 2008, rather than April 1, which is when Perla claims the separation began.) We also note that, although Jorge asserts that he posted $570,000 in bonds, he does not provide evidence

11

to support this assertion. Based on this record, we conclude that the trial court did not abuse its discretion by determining that it was in the children's best interest for Jorge to pay his children support at $618 per month for 17 of the months of separation for a total of $10,506 in past child support due.

**Attorney's fees**

Jorge challenges the award of attorney's fees to Perla without a direct pleading for attorney's fees in the initial petition, without testimony regarding hours spent on the clients or documentary evidence supporting the bills, without segregation of the attorney's fees from costs and expenses, and without evidence regarding whether "good cause" exists for payment of the fees.

When, as in this case, a statute states that a trial court "may" award attorney's fees, such an award is discretionary and we review the trial court's choice to award fees under the abuse-of-discretion standard. *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 458-59 (Tex. App.—Fort Worth 2009, pet. denied). We then review whether sufficient evidence supports the amount of fees awarded. *Goodson v. Castellanos*, 214 S.W.3d 741, 758-59 (Tex. App.—Austin 2007, pet. denied); *see also Garcia v. Gomez*, 319 S.W.3d 638, 646 (Tex. 2010).

Perla acknowledges that she did not plead for attorney's fees in the divorce petition, but correctly notes that she requested them in her application for protective order. The family code permits courts to assess reasonable attorney's fees when considering a request for a protective order against a party found to have committed family violence. Tex. Fam. Code Ann. § 81.005(a) (West 2008). The fees awarded as compensation for a private attorney "shall be paid to the private attorney who may enforce the order for fees in the attorney's own name." *Id.* § 81.006(a). These

12

statutes do not require a showing of "good cause" to award the fees. Perla's attorney testified as follows regarding attorney's fees:

> I practice in Travis County and the surrounding counties. I charge $375 an hour. I am board certified and have been since 2002. And my fees are reasonable and were necessary in this case.
>
> We had several hearings, we've had to file a protective order and a temporary ex parte protective order. So Mrs. Monroy paid me $6,000 at the beginning and that's depleted. And so I think I asked for $6,000 in the written final decree of divorce. But, actually, it's going to be closer to 7,500. And we are asking that he pay all of my fees.

The trial court awarded $7,500 in attorney's fees payable to and enforceable by Perla's attorney.

Factors that a factfinder may consider when determining the reasonableness of a fee include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

13

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A ( West Supp. 2010) (Tex. State Bar R. art. X, § 9)).

Perla's attorney testified that she charges $375 per hour and requests $7,500 in fees (without regard to court costs or other fees), which simple division shows to be a claim for 20 hours of work. Perla's attorney's testimony reveals that the attorney is sufficiently skilled and experienced to be board certified. Perla's attorney testified without contradiction that she believes her fees to be reasonable and necessary. Jorge presented no evidence countering Perla's attorney's testimony and did not cross-examine her regarding the work performed. Perla prevailed at each stage of the protective order proceeding. Although the award of attorney's fees appears in the divorce decree, it does not specify a basis for the award, and the fee award could be compensation solely for work leading to the protective order. Jorge has not demonstrated otherwise, and thus has not shown that the trial court erred by awarding the attorney's fees on this record.

## CONCLUSION

We conclude that, on the record presented, Jorge has not demonstrated that the trial court erred. We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   August 31, 2011

14