**Affirmed in part, Reversed in part, Remanded, and Opinion filed July 23, 2014.**



In the

# Fourteenth Court of Appeals

### NO. 14-14-00135-CV

### IN THE INTEREST OF J.M.W.

**On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 11-DCV-189139**

### O P I N I O N

This is an appeal from the trial court's SAPCR[1] order granting a child support modification in favor of appellee J.S.F., the mother of J.M.W., an adult child who is mentally disabled. Appellant M.L.W., the father of J.M.W., contends the trial court abused its discretion by: (1) disregarding the general child support

---

[1] Under the Texas Family Code, a suit affecting the parent-child relationship or SAPCR is defined as a suit "in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." Tex. Fam. Code Ann. § 101.032(a) (West, Westlaw through 2015 R. Sess.).

provisions and (2) improperly construing the statute governing the amount of support for an adult disabled child, as well as by (3) improperly including the income of Father's new spouse and (4) ordering support that grossly exceeds the properly calculated amount. Father also argues that: (5) the trial court abused its discretion in refusing to reopen the evidence to admit his premarital agreement with his new spouse; (6) the court reversibly erred in failing to make required findings; and (7) the court's award of attorney's fees should be set aside or, in the alternative, modified.

We conclude that the trial court abused its discretion by incorrectly analyzing and applying the law with regard to its determination of the amount of child support. We conclude that the trial court did not abuse its discretion in excluding the premarital agreement or in awarding attorney's fees. Therefore, we affirm in part and reverse in part the trial court's judgment, and remand for recalculation of the amount of child support and reconsideration of the amount of attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother were divorced by final decree of divorce in January 1987 in Montgomery County, Texas. They have one child, J.M.W., born in October 1985. Mother was named managing conservator, and Father was named possessory conservator. Father was awarded periods of possession and ordered to pay $300 in monthly child support to Mother for the benefit of J.M.W.

Father remarried and had additional children with his second wife. Father's child support obligations for these children ended in 2011. He married his third, current wife in 2002. Mother remarried and relocated to Katy in Fort Bend County, Texas.

2

J.M.W. resides with Mother. Father ceased providing any child or other financial support for J.M.W. when the child graduated from high school at age 19. Father also stopped regular periods of possession of J.M.W. and since then only has had possession of J.M.W. twice a year for a few hours each time.

In April 2011, when J.M.W. was 25 years old, Mother filed an original petition to modify parent-child relationship in Montgomery County, seeking support from Father for the benefit of their adult disabled son. This suit was transferred to Fort Bend County and assigned to the trial court. The case was tried before the trial court in July 2013.

J.M.W. has been diagnosed with attention deficit hyperactivity disorder and bipolar disorder. Since age seven, J.M.W. has undergone courses of treatment by a psychiatrist and a psychologist. J.M.W. has become violent with and hit Mother more than once and has destroyed property in her home. J.M.W. has held only one job for six months at McDonald's, which he lost due to angry outbursts.

During the day, Monday through Friday, J.M.W. participates in a workshop job program at Brookwood Community[2] and earns a total of $758.00 annually for such work. Mother applied for and J.M.W. began receiving supplemental social security income and Medicaid benefits at approximately age 18. J.M.W. receives $473.24 monthly from these benefits. J.M.W.'s necessary monthly living expenses while residing with Mother amount to $2,196.

According to the psychiatrist appointed in this case,[3] J.M.W. is incapable of

---

[2] A scholarship fully covers this tuition.

[3] After Father contested whether J.M.W. suffered from disabilities, Mother requested and the trial court granted an independent mental evaluation. Father previously filed a petition for writ of mandamus, arguing that the trial court abused its discretion by not appointing Father's chosen expert and by requiring Father to pay for such evaluation. We denied his petition. *In re Weisinger*, No. 14-12-00558-CV, 2012 WL 3861960, at *4 (Tex. App.—Houston [14th Dist.] Sept. 6, 2012, no pet.) (mem. op. on reh'g).

self-support and independent living, and if the child did not live with Mother, J.M.W. would require full-time, structured residential placement. According to Mother's disability benefits consultant, it would be in J.M.W.'s best interest to transition to residential placement while Mother is still alive, and Brookwood would be a good placement. Both Father and his wife testified that J.M.W.'s living at their home on a full-time basis would not be an option. The median monthly tuition for a full-time resident at Brookwood is approximately $3,300.

Mother testified that her monthly income from her position as a special education teacher is $1,620. The trial record reveals the following about Father's income as a car salesman:

- Father's 2009 W-2 reflects wages of $36,563.51, and his 1099's show miscellaneous income of $3,800, for a total of $40,363.51.

- Father's 2010 W-2 reflects wages of 35,160.04, and his 1099 shows miscellaneous income of $1,275, for a total of $36,435.04.

- Father's 2011 W-2 reflects wages of $54,940.98, and his 1099's show miscellaneous income of $7,500, for a total of $62,440.98.

- Father's 2012 W-2's reflect wages of $33,649.06, and his 1099 shows miscellaneous income of $2,850, for a total of $36,499.06.

- Starting in 2013, Father began working as a fleet sales manager with a monthly base salary of $4,000, plus a 25% commission.[4]

Father testified that he and his wife had a combined gross income of about $150,000 for tax years 2009 and 2010. Father and his wife's 2009 joint tax return

---

[4] Father also indicated he had about $65,000 in retirement benefits from his former dealership, a $25,000 life insurance policy through his work, and a $400,000 life insurance policy, of which his wife is the beneficiary.

4

reflects income and adjusted gross income of $151,965. Their 2010 joint return reflects income and adjusted gross income of $149,922. The wages portion of the tax returns includes both Father's and Father's wife's wages.[5] The returns reflect income from rental properties. Father's wife owns rental properties acquired prior to their marriage, and Father owns no separate properties.

After both sides rested, the trial court announced its finding that J.M.W. met the required standards to receive the benefits of child support as a disabled child. The court reconvened in September 2013 to determine the amount and manner of payment. Over Father's objection, Mother argued that under section 154.306 of the Texas Family Code the trial court was able to consider Father's wife's resources for purposes of setting J.M.W.'s support.

The trial court signed a final order on October 4, 2013, ordering Father to pay $1,500.00 in monthly child support indefinitely, plus $1,500.00 in monthly support retroactive to April 2011. The court ordered Father to pay Mother's counsel her attorney's fees and expenses in the amount of $28,454.01.

Father requested findings of fact and conclusions of law pursuant to Texas Rule of Civil Procedure 296. Pursuant to section 154.130[6] of the Texas Family

---

[5] Father's wife was employed by Anadarko as a tax manager.

[6] Section 154.130, Findings in Child Support Order, provides:

(a) Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in rendering an order of child support, the court shall make the findings required by Subsection (b) if:

    (1) a party files a written request with the court not later than 10 days after the date of the hearing;

    (2) a party makes an oral request in open court during the hearing; or

    (3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable.

(b) If findings are required by this section, the court shall state whether the

5

Code, Father also requested findings regarding whether application of the child support guidelines would be unjust or inappropriate, his monthly net resources, Mother's monthly net resources, the percentage applied to the first $8,550 of his monthly net resources for child support, and the specific reasons that the amount of support varied from the amount computed by applying the section 154.125[7]

application of the guidelines would be unjust or inappropriate and shall state the following in the child support order:

"(1) the net resources of the obligor per month are $_____;

"(2) the net resources of the obligee per month are $_____;

"(3) the percentage applied to the obligor's net resources for child support is _____%; and

"(4) if applicable, the specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable."

Tex. Fam. Code Ann. § 154.130 (West, Westlaw through 2015 R. Sess.).

[7] Section 154.125, Application of Guidelines to Net Resources, provides:

(a) The guidelines for the support of a child in this section are specifically designed to apply to situations in which the obligor's monthly net resources are not greater than $7,500 or the adjusted amount determined under Subsection (a-1), whichever is greater.

(a-1) The dollar amount prescribed by Subsection (a) is adjusted every six years as necessary to reflect inflation. The Title IV-D agency shall compute the adjusted amount, to take effect beginning September 1 of the year of the adjustment, based on the percentage change in the consumer price index during the 72-month period preceding March 1 of the year of the adjustment, as rounded to the nearest $50 increment. The Title IV-D agency shall publish the adjusted amount in the Texas Register before September 1 of the year in which the adjustment takes effect. For purposes of this subsection, "consumer price index" has the meaning assigned by Section 341. 201, Finance Code.

(b) If the obligor's monthly net resources are not greater than the amount provided by Subsection (a), the court shall presumptively apply the following schedule in rendering the child support order:

CHILD SUPPORT GUIDELINES

BASED ON THE MONTHLY NET RESOURCES OF THE OBLIGOR

1 child        20% of Obligor's Net Resources

percentage guidelines.

The trial court issued findings of fact and conclusions of law. The court concluded that "[t]he application of the percentage guidelines found in § 154.125 of the Texas Family Code (the "Customary Guidelines" herein) in this case is unjust and inappropriate" and that "[a]s an Adult Child, Texas Family Code § 154.306 is the appropriate and correct statutory provision to determine the amount of child support [the child] needs." The trial court did not otherwise include section 154.130 findings. Instead, the court issued a finding that the "total monthly financial resources of [Father] available to him for the payment of child support is $12,500." The court stated in a footnote that it based this figure on Father's joint tax returns.

Father requested additional or amended findings and conclusions pursuant to Texas Rule of Civil Procedure 298, again specifically requesting the section 154.130 findings, as well as asking the trial court to segregate what portion of the $12,500 figure reflected his as opposed to his wife's income. Father also filed a motion for new trial.

The trial court held a post-judgment hearing. At his hearing, Father argued that the court had to adhere to chapter 54 of the Texas Family Code in setting child support and reurged his position that the court could not use his wife's income and property to calculate support. The court indicated that it "was persuaded otherwise" and, on December 12, 2013, signed a reformed order for support of disabled child.

---

Tex. Fam. Code Ann. § 154.125 (West, Westlaw through 2015 R. Sess.). Effective September 1, 2013, the initial "cap" on an obligor's net resources under subsection (a-1) increased from $7,500 to $8,550.

The trial court issued findings of fact and conclusions of law as to the reformed order. The court included the same $12,500 finding and footnote, and concluded that "[t]he application of the percentage guidelines found in § 154.122[8] of the Texas Family Code (the "Customary Guidelines" herein) in this case is unjust and inappropriate" and that "[a]s an Adult Child, Texas Family Code § 154.306 is the appropriate and correct statutory provision to determine the amount of child support needs."

Father again requested additional findings and conclusions pursuant to rule 298, incorporating his previous request for additional or amended findings and conclusions.[9] Father also filed a motion to permit additional evidence and motion to modify, correct, or reform judgment, or alternatively, motion for new trial. Father sought to offer his and his wife's prenuptial agreement entered in 2002, which purportedly states that separate earnings and income from separate property retain their separate character. The trial court held a hearing in February 2014 and denied Father's motions. The trial court also denied Father's request for additional findings and conclusions as to the reformed order. Father timely appealed.

---

[8] Section 154.122, Application of Guidelines Rebuttably Presumed in Best Interest of Child, provides:

> (a) The amount of a periodic child support payment established by the child support guidelines in effect in this state at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child.

> (b) A court may determine that the application of the guidelines would be unjust or inappropriate under the circumstances.

Tex. Fam. Code Ann. § 154.122 (West, Westlaw through 2015 R. Sess.). As indicated above, the trial court's original conclusion referenced section 154.125.

[9] Father specifically requested conclusions regarding the presumptive status of Father's wife's earnings as community property, and the sole management, control, and disposition of certain community property, and a finding that no legally or factually sufficient evidence established Father's wife's earnings were either her separate property, her sole-management community property, or mixed with community property subject to Father's sole management in such a manner to make those earnings subject to joint management.

Father brings seven issues on appeal. Father challenges the amount of the child support award, arguing that the trial court: (1) disregarded the child support guidelines, (2) improperly construed section 154.306 of the Texas Family Code, (3) included or substantially considered the income from Father's new spouse, and (4) grossly exceeded the guidelines. Father also argues that the trial court abused its discretion by: (5) refusing to reopen the evidence to include his premarital agreement; (6) failing to make required statutory findings; and (7) awarding attorney's fees, considering all the other errors.

## II. ANALYSIS

### A. Standards of review

A trial court's order setting or modifying child support will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re A.M.P.*, 368 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The court also enjoys broad discretion in determining the amount of retroactive child support, if any, to be ordered, and in determining whether to award attorney's fees. *See* Tex. Fam. Code Ann. §§ 106.002, 154.131(a) (West, Westlaw through 2015 R. Sess.); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996) (attorney's fees); *Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (retroactive child support).

Courts abuse their discretion when they act arbitrarily or unreasonably, or without reference to guiding rules or principles. *Worford*, 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Courts have no discretion, however, when determining what the law is, which law governs, or how to apply the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.

9

1992). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). There is no abuse of discretion where some evidence of a substantive and probative character supports the court's exercise of its discretion. *Id.*

We review questions of statutory construction de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). "A fundamental rule of statutory construction is to ascertain and give effect to the Legislature's intent." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). We construe the words of a statute according to their plain meaning, *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004), and in the context of the statute's surrounding provisions, *see* Tex. Gov't Code Ann. § 311.011(a) (West, Westlaw through 2015 R. Sess.). We must not engage in forced or strained construction; rather, we must yield to the plain sense of the words the Legislature chose. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).

## B. Child support for adult disabled children

The trial court may order child support for a disabled child for an indefinite period. Tex. Fam. Code Ann. §§ 154.001(a)(4) ("The court may order either or both parents to support a child in the manner specified by the order . . . if the child is disabled as defined in this chapter, for an indefinite period."), 154.302(a)[10]

---

[10] Section 154.302, Court-Ordered Support for Disabled Child, provides:

(a) The court may order either or both parents to provide for the support of a child for an indefinite period and may determine the rights and duties of the parents if the court finds that:

(1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will

10

(West, Westlaw through 2015 R. Sess.). A suit to obtain support for an adult disabled child may be filed at any time, regardless of the child's age, and may be filed as a suit for modification as provided by chapter 156. Tex. Fam. Code Ann. § 154.305(a)(1), (c) (West, Westlaw through 2015 R. Sess.).

Section 154.306, Amount of Support After Age 18, provides:

In determining the amount of support to be paid after a child's 18th birthday, the specific terms and conditions of that support, and the rights and duties of both parents with respect to the support of the child, the court shall determine and give special consideration to:

(1) any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;

(2) whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;

(3) the financial resources available to both parents for the support, care, and supervision of the adult child; and

(4) any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.

Tex. Fam. Code Ann. § 154.306 (West, Westlaw through 2015 R. Sess.).

## 1. Interpreting section 154.306; Father's first, second, and sixth issues

Father's first two issues concern the trial court's alleged failures to analyze or apply the law correctly. Father's sixth issue regarding section 154.130 findings is similarly related to the trial court's alleged legal errors. We conclude that the

not be capable of self-support; and

(2) the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child.

Tex. Fam. Code Ann. § 154.302(a) (West, Westlaw through 2015 R. Sess.).

trial court committed a clear abuse of discretion, and sustain Father's first, second, and sixth issues.

Consistent with her position below, Mother argues that courts can solely consider and apply section 154.306 when awarding support for an adult disabled child. That is, courts need not look to any of the provisions from other chapters or subchapters of the Family Code because the Legislature provided a specific, unique scheme for calculating support for adult disabled children in section 154.306.

Father argues that the trial court abused its discretion by refusing to consider and apply general provisions from other parts of the Family Code when it determined the amount of support.[11] Father asserts section 154.306 provides that the trial court shall give "special," not exclusive, consideration to its enumerated factors. That is, section 154.306 expands what courts consider in the case of adult disabled children but does not restrict the consideration and application of other general provisions from other parts of the Family Code.

Father further points to section 154.304, General Procedure, which provides:

> Except as otherwise provided by this subchapter, the substantive and procedural rights and remedies in a suit affecting the parent-child relationship relating to the establishment, modification, or enforcement of a child support order apply to a suit filed and an order rendered under this subchapter.

Tex. Fam. Code Ann. § 154.304 (West, Westlaw through 2015 R. Sess.). Therefore, according to Father, in the context of determining support for an adult disabled child, courts must still consider the child support guidelines in subchapter C. *See* Tex. Fam. Code Ann. §§ 154.121–.133 (West, Westlaw through 2015 R.

---

[11] On appeal, Father does not challenge the trial court's statutory findings that J.M.W. is disabled and eligible for child support. *See id.* § 154.302(a).

12

Sess.). In other words, although courts ultimately may conclude in their discretion that applying the guidelines is unjust and inappropriate per section 154.122 (which the trial court did here), they must determine the presumptive amount of support per section 154.125, and then must consider the additional factors in section 154.123[12] and "specially" consider the particular factors outlined in section

---

[12] Section 154.123, Additional Factors for Court to Consider, provides:

(a) The court may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines.

(b) In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, including:

(1) the age and needs of the child;

(2) the ability of the parents to contribute to the support of the child;

(3) any financial resources available for the support of the child;

(4) the amount of time of possession of and access to a child;

(5) the amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed and including an increase or decrease in the income of the obligee or income that may be attributed to the property and assets of the obligee;

(6) child care expenses incurred by either party in order to maintain gainful employment;

(7) whether either party has the managing conservatorship or actual physical custody of another child;

(8) the amount of alimony or spousal maintenance actually and currently being paid or received by a party;

(9) the expenses for a son or daughter for education beyond secondary school;

(10) whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity;

(11) the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties;

(12) provision for health care insurance and payment of uninsured medical expenses;

154.306 in determining whether to deviate from the guidelines. Father also contends that the courts remain bound to issue section 154.130 findings when requested and when the guidelines are not followed.[13] *See id.* § 154.130. Further, Father argues that courts remain bound by other general provisions from subchapter B, Computing Net Resources Available for Payment of Child Support. *See* Tex. Fam. Code Ann. §§ 154.061–.070 (West, Westlaw through 2015 R. Sess.). These provisions include section 154.061,[14] on computation of net monthly income; section 154.062,[15] on calculating net resources; and section 154.069,[16]

---

(13) special or extraordinary educational, health care, or other expenses of the parties or of the child;

(14) the cost of travel in order to exercise possession of and access to a child;

(15) positive or negative cash flow from any real and personal property and assets, including a business and investments;

(16) debts or debt service assumed by either party; and

(17) any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

Tex. Fam. Code Ann. § 154.123.

[13] Father separately briefs this as his sixth issue. Mother responds that under section 154.306 the trial court was not required to issue section 154.130 findings.

[14] Section 154.061, Computing Net Monthly Income, provides:

(a) Whenever feasible, gross income should first be computed on an annual basis and then should be recalculated to determine average monthly gross income.

(b) The Title IV-D agency shall annually promulgate tax charts to compute net monthly income, subtracting from gross income social security taxes and federal income tax withholding for a single person claiming one personal exemption and the standard deduction.

Tex. Fam. Code Ann. § 154.061.

[15] *See* Tex. Fam. Code Ann. § 154.062 (detailing what resources include and do not include).

[16] Tex. Fam. Code Ann. § 154.069(a) ("The court may not add any portion of the net resources of a spouse to the net resources of an obligor or obligee in order to calculate the amount of child support to be ordered."). Subchapter E, Modification of Child Support, contains a virtually identical provision. *See* Tex. Fam. Code § 156.404(a) (West, Westlaw through 2015 R. Sess.) ("The court may not add any portion of the net resources of a new spouse to the net

14

which prohibits adding any portion of a spouse's net resources to calculate child support.

We agree with Father. First, the plain language of section 154.306 indicates that in the context of determining the amount of support for adult disabled children, "the court shall determine and give special consideration to" the four enumerated factors. *Id.* § 154.306. The adjective "special" means "unusual; extraordinary," "held in particular esteem" or "being other than the usual: additional, extra." Black's Law Dictionary (10th ed. 2014, Westlaw); Merriam-Webster's Collegiate Dictionary 1197 (11th ed. 2004). Certainly, the plain text highlights the importance of these particular factors. However, we discern no language in section 154.306 indicating that these are the sole or exclusive factors for courts to consider when setting child support for an adult disabled child. *Id.*

Moreover, we may not read a provision such as section 154.306 in isolation, but we must always interpret it in the context of the entire law in which it is found. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *City of Amarillo v. R.R. Comm'n of Tex.*, 894 S.W.2d 491, 494 (Tex. App.—Austin 1995, writ denied). "[C]ontext is essential to textual analysis, something [the Supreme Court of Texas] has held repeatedly, emphatically, and unanimously." *In re Ford Motor Co.*, 442 S.W.3d 265, 273 (Tex. 2014).

Section 154.304 provides that "[e]xcept as otherwise provided by this subchapter," the substantive and procedural rights and remedies in a SAPCR suit relating to the establishment, modification, or enforcement of a child support order apply to a suit filed and an order rendered under subchapter F. Tex. Fam. Code Ann. § 154.304. The pertinent definition of the adverb "otherwise" is "to the

resources of an obligor or obligee in order to calculate the amount of child support to be ordered in a suit for modification.").

15

contrary; differently." Black's Law Dictionary (10th ed. 2014, Westlaw); *see also* Merriam-Webster's Collegiate Dictionary 271 (11th ed. 2004) (defining noun "contrary" as "a fact or condition incompatible with another: opposite"). With minimal exceptions,[17] we discern nothing within any of the provisions of subchapter F, including section 154.306, that provides "to the contrary" or "differently" from the general child support computation, guideline, and modification provisions—such as those provided in sections 154.061, 154.062, 154.069, 154.121, 154.122, 154.123, 154.125, 154.126,[18] 154.130, 154.131,[19]

---

[17] The Legislature did provide "to the contrary" for certain distinct substantive and procedural rights and remedies in the specific context of disabled children. For example, subchapter F allows for support orders for disabled children beyond age 18 or high school graduation. *Compare* Tex. Fam. Code Ann. §§ 154.001(a-1), 154.002 (West, Westlaw through 2015 R. Sess.), *with id.* §§ 154.302(a), 154.305(a)(1). And subchapter F expressly states that it does not affect parents' contractual remedies for the support of a disabled child. *Compare id.* § 154.124(c) ("Terms of the agreement pertaining to child support in the order may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as a contract."), *with id.* § 154.308(a)(2) (West, Westlaw through 2015 R. Sess.) ("This subchapter does not affect a parent's . . . ability to contract for the support of a disabled child.").

[18] Section 154.126, Application of Guidelines to Additional Net Resources, provides:

(a) If the obligor's net resources exceed the amount provided by Section 154.125(a), the court shall presumptively apply the percentage guidelines to the portion of the obligor's net resources that does not exceed that amount. Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child.

(b) The proper calculation of a child support order that exceeds the presumptive amount established for the portion of the obligor's net resources provided by Section 154.125(a) requires that the entire amount of the presumptive award be subtracted from the proven total needs of the child. After the presumptive award is subtracted, the court shall allocate between the parties the responsibility to meet the additional needs of the child according to the circumstances of the parties. However, in no event may the obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100 percent of the proven needs of the child.

Tex. Fam. Code Ann. § 154.126.

[19] *See* Tex. Fam. Code Ann. § 154.131(a), (b) (providing that "[t]he child support

156.402,[20] and 156.404—when the court renders a child support order for an adult disabled child. While section 154.306 provides for mandatory factors to be applied—indeed, "specially considered"—after a disabled child reaches age 18, its application is not "opposite" or "incompatible" with the application of such other provisions. Here, the context of those surrounding provisions consistently highlights the child support guidelines, and provides specific details, definitions, and prohibitions for applying them properly, as well as specific considerations for ultimately determining not to apply them. *See* Tex. Fam. Code Ann. §§ 154.061, 154.062, 154.069, 154.121, 154.122, 154.123, 154.125, 154.126, 154.130, 154.131, 156.402, 156.404.

Interpreting section 154.306 to trump any consideration or application of the guidelines, or of the various provisions concerning support computation, also would not accord with common sense. *See Ford Motor Co.*, 442 S.W.3d at 272 (noting "[t]his text-driven analysis also accords with common sense"). The stated intent of the Legislature in providing the child support guidelines is "to guide the court in determining an equitable amount of child support." Tex. Fam. Code Ann. § 154.121. The law presumes the guideline amount to be reasonable and in the best interest of the child. *Id.* § 154.122. Likewise, with regard to retroactive child support, the stated intent of the Legislature in providing the child support guidelines is "to guide the court in determining the amount of retroactive child

---

guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered" and "[i]n ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period").

[20] *See* Tex. Fam. Code Ann. § 156.402 (West, Westlaw through 2015 R. Sess.) (providing that courts may consider chapter 154 child support guidelines to determine whether modification of existing order is warranted and may modify order to substantially conform to guidelines); *Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing section 154.402(a) regarding courts' discretion to deviate from guidelines in modification proceedings).

support, if any, to be ordered." *Id.* § 154.131. The guidelines also come into play when courts are faced with a potential modification of an existing order. *Id.* §156.402.

Even if section 154.306 might be susceptible to a guidelines-free construction standing alone, we should not give one provision a meaning out of harmony or inconsistent with other provisions of the same act. *See Helena Chem. Co.*, 47 S.W.3d at 493; *In re M.R.*, 975 S.W.2d 51, 54 (Tex. App.—San Antonio 1998, pet. denied) (citing *R.R. Comm'n of Tex.*, 894 S.W.2d at 494)). Beyond the consistent backdrop of the guidelines, the various code provisions also consistently include mandatory language regarding what courts must and must not do when computing net resources and applying the guidelines when determining child support. The court "shall" calculate net resources when determining child support liability, Tex. Fam. Code Ann. § 154.062; "shall" consider evidence of the enumerated factors when determining whether applying the guidelines would be unjust or inappropriate, *id.* § 154.123(b); "shall" presumptively apply the guideline schedule, *id.* §§ 154.125(b), 154.126; "shall" make findings concerning net resources of the obligor and obligee, and the percentage applied to the obligor's net resources, and "shall" state reasons for any deviation from the guidelines, *id.* § 154.130; "shall" consider the obligor's net resources in ordering retroactive child support, *id.* § 154.131(b); and "may not" add a new spouse's net resources to the net resources of the obligor or obligee when calculating the support amount, *id.* §§154.069, 156.404.

Mother has not explained how, nor can we determine that, our reading of section 154.306 presents any conflict—much less an irreconcilable one—with the general child support provisions. *See* Tex. Gov't Code Ann. § 311.026 (West, Westlaw through 2015 R. Sess.). To the contrary, interpreting section 154.306 in

the manner Mother does, with which the trial court agreed, would require us to impermissibly give such special provision a meaning that conflicts with other general provisions when, in fact, the provisions can be reasonably harmonized.[21] *See* Tex. Gov't Code Ann. §§ 311.021, 311.026 (West, Westlaw through 2015 R. Sess.); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002) ("[W]e must always . . . attempt to harmonize [a statute's] various provisions."); *M.R.*, 975 S.W.2d at 54 ("The provisions of the statute must, if possible, be harmonized."); *R.R. Comm'n of Tex.*, 894 S.W.2d at 494 ("[C]ourts will not give one provision a meaning that conflicts with other provisions if the provisions can be reasonably harmonized.").

Finally, our interpretation is not inconsistent with any case applying or interpreting section 154.306.[22] Therefore, we conclude that, when determining

---

[21] For example, Mother interprets the factor of "the financial resources available to both parents" to reach the net resources of a new spouse. *See* Tex. Fam. Code Ann. § 154.306(3). However, nothing within subchapter F indicates that as long as the SAPCR suit involves an adult disabled child, the prohibition against including any portion of a new spouse's net resources to the net resources of the obligor in order to calculate the amount of child support would not apply. *See id.* §§ 154.069, 156.404.

[22] *See In re L.J.M.*, No. 13-13-00367-CV, 2014 WL 3053209, at *4–5 (Tex. App.—Corpus Christi July 3, 2014, no pet.) (mem. op.) (trial court applied guidelines and provided section 154.130 findings, concluding court properly considered section 154.306 factors); *In re W.M.R.*, No. 02-11-00283-CV, 2012 WL 5356275, at *12–14 (Tex. App.—Fort Worth Nov. 1, 2012, no pet.) (mem. op.) (citing section 154.062 regarding obligor's available resources beyond earnings and concluding award not excessive where court considered sufficient evidence to support each section 154.306 factor); *Vandemark v. Jimenez*, No. 01-09-00168-CV, 2010 WL 1241287, at *5–6 (Tex. App.—Houston [1st Dist.] Apr. 1, 2010, no pet.) (mem. op.) (trial court applied guidelines based on parties' net resources, presuming omitted transcript supported court's implied section 154.306 findings); *Wolk v. Wolk*, No. 03-06-00595-CV, 2007 WL 2682173, at *3–4 (Tex. App.—Austin Sept. 12, 2007, no pet.) (mem. op.) (trial court applied guidelines based on evidence of obligor's income, but on face of record court lacked sufficient information regarding section 154.306 factors); *In re M.W.T.*, 12 S.W.3d 598, 603, 606 (Tex. App.—San Antonio 2000, pet. denied) (trial court applied guidelines based on obligor's net resources, concluding record contained evidence concerning each of section 154.306 criteria), *disapproved of on other grounds by Office of Atty. Gen. of Tex. v. Scholer*, 403 S.W.3d 859 (Tex. 2013).

child support for adult disabled children, courts must apply section 154.306, but they continue to remain bound under section 154.304 to consider and apply the substantive rights and remedies applicable to SAPCR suits "[e]xcept as otherwise provided." *See* Tex. Fam. Code Ann. §§ 154.304, 154.306. In a modification suit involving an adult disabled child, these provisions may include, among others, those in subchapter B of chapter 154 related to computing net resources available for support; in subchapter C related to the child support guidelines; in subchapter F related to support for disabled children; and in subchapter E of chapter 156 related to modification of child support. *See, e.g., id.* §§ 154.061, 154.062, 154.069, 154.121, 154.122, 154.123, 154.125, 154.126, 154.130, 154.131, 154.302, 154.304, 154.305, 154.306, 156.402, 156.404.

Here, the record reflects that the trial court incorrectly interpreted section 154.306 as providing the exclusive factors for its determination of child support for J.M.W. For example, the court indicated that, when considering the financial resources available to Father, *see id.* § 154.306(3), it could in its discretion disregard section 154.069(a) and include Father's wife's income in its support determination. Moreover, when rendering its findings and conclusions, despite Father's timely request for section 154.130 findings, the trial court refused to provide any findings regarding the monthly net resources of Father or Mother, or the percentage applied to Father's net resources. *See id.* § 154.130(b).

We conclude that the trial court's clear failures to analyze and apply the law correctly in setting the amount of J.M.W.'s child support constitute an abuse of discretion. *See Walker*, 827 S.W.2d at 840. Therefore, we sustain Father's first and second, as well as his sixth, issues. *See id.*; *In re S.B.S.*, 282 S.W.3d 711, 717 (Tex. App.—Amarillo 2009, pet. denied) (failure to make section 154.130 findings was reversible error); *Omodele v. Adams*, No. 14-01-00999-CV, 2003 WL 133602,

at *5 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.) (same).[23]

Accordingly, we reverse the court's judgment as to the award of adult disabled child support and retroactive child support. We remand for recalculation of the support award and issuance of findings in support of such award in compliance with the applicable sections of the Family Code. In doing so, we recognize that the trial court remains able to apply its considerable, valid discretion in setting the amount of child support, including retroactive support, for J.M.W., and we express no opinion as to what a proper amount of child support would be.[24]

## 2. Father's third and fourth issues

Father's third and fourth issues—whether the trial court included or substantially considered the income from his new spouse, and grossly exceeded the guidelines—essentially challenge the sufficiency of the evidence supporting the child support obligations set in the reformed order. Because we have already granted Father the relief that he requests by his third and fourth issues in sustaining his first, second, and sixth issues, we need not address those issues. *See* Tex. R. App. P. 47.1.

---

[23] To the extent we are required to perform any harm analysis, we cannot conclude that such abuse of discretion was harmless here. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) ("A trial court's failure to make findings is not harmful error if the record before the appellate court affirmatively shows that the complaining party suffered no injury." (internal quotation marks omitted)). Although the trial court expressly noted it was relying on joint tax returns that included Father's wife's earnings and income from her property, it refused to make any findings regarding Father's and Mother's monthly net resources and the percentage applied to Father's net resources. The court's refusal to make findings prevented Father from effectively contesting any deviation from the guidelines. *See* Tex. R. App. P. 44.1(a)(2); *Tenery*, 932 S.W.2d at 30; *Omodele*, 2003 WL 133602, at *5.

[24] Our record does not reflect Father's payment of the adult disabled child support and retroactive support the trial court rendered in its October and December 2013 orders. However, upon recalculation, the court should credit overpayment, if any, by Father toward his future payments.

## C. Motion to reopen evidence: Father's fifth issue

Father also argues the trial court abused its discretion in refusing to reopen the evidence to include Father and his wife's premarital agreement in order to demonstrate that his wife's income was not a financial resource available to Father for consideration when awarding child support. We disagree.

Trial courts have broad discretion to permit additional evidence to be offered at any time when it clearly appears necessary to the administration of justice. *See* Tex. R. Civ. P. 270; *Gurka v. Gurka*, 402 S.W.3d 341, 349 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In determining whether to grant a motion to reopen, courts consider whether: (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause an injustice. *See Naguib v. Naguib*, 137 S.W.3d 367, 373 (Tex. App.—Dallas 2004, pet. denied). We should not disturb a trial court's ruling if all of these factors are not satisfied. *Id.*

Father has not demonstrated all of these factors. For example, Father has not shown that his own premarital agreement allegedly dating from 2002 was unavailable to him at the time of the trial. *See id.* Moreover, whether such premarital agreement provided for Father and his wife's separate earnings and properties to retain their separate status for purposes of a determination of a division of property upon divorce does not appear to affect the application of the Family Code's prohibition against including a spouse's net resources for purposes of child support. *See* Tex. Fam. Code Ann. §§ 154.062, 154.069, 156.404; *Koenig v. DeBerry*, No. 03-09-00252-CV, 2010 WL 1009170, at *4 (Tex. App.—Austin Mar. 17, 2010, no pet.) (mem. op.) ("[E]ven though income generated by a spouse's separate property is community property, no portion of that income

should be included in calculating a child support obligor's net resources."); *In re Knott*, 118 S.W.3d 899, 904 (Tex. App.—Texarkana 2003, no pet.) ("[A] portion of the spouse's assets that might traditionally be labeled as community property but are derivative of the spouse's separate property or employment are outside the items which comprise the obligor's 'net resources' because they would fall entirely within the 'net resources' of the obligor's spouse."); *see also* Tex. Fam. Code § 3.102(a) (West, Westlaw through 2015 R. Sess.) (spouse has sole management and control of community property that spouse would have owned if single, including personal earnings and revenue from separate property). Such excluded evidence was not decisive.

Therefore, we conclude that the trial court did not abuse its discretion in denying Father's motion to reopen, and we overrule this issue.

## D. Attorney's fees: Father's seventh issue

Finally, Father argues that the trial court's award of attorney's fees should be set aside, considering the errors the court committed in reestablishing child support. Although we have concluded the trial court abused its discretion in its setting of the amount of the child support award, we have not disturbed the trial court's underlying determination that the child qualifies for support, and Mother substantially and materially prevailed on her petition to modify. *See Coburn v. Moreland*, 433 S.W.3d 809, 840–41 (Tex. App.—Austin 2014, no pet.); *Norris v. Norris*, 56 S.W.3d 333, 346 (Tex. App.—El Paso 2001, no pet.). The trial court did not abuse its discretion by granting reasonable attorney's fees to Mother's counsel.

However, in light of our decision today to remand for recalculation of the child support award in accordance with the Family Code, the trial court also should have an opportunity to decide whether it wishes to leave the amount of its

attorney's fee award intact.  *See In re K.J.M.*, 138 S.W.3d 536, 538 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

We sustain Father's seventh issue, and we remand for reconsideration of the amount of attorney's fees.[25]

### III.    CONCLUSION

Having sustained Father's first, second, sixth, and seventh issues, we reverse the trial court's judgment with regard to its awards of adult disabled child support, retroactive child support, and attorney's fees.  We affirm the remainder of the judgment and remand for further proceedings in accordance with this opinion.

/s/          Marc W. Brown
             Justice

Panel consists of Justices Jamison, Busby, and Brown.

---

[25] Because we are remanding, we do not address Father's alternative subissue requesting our modification of the award.