# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00127-CV

---

**Sandra Tobias and Aaron R. Tobias, Appellants**

**v.**

**Joseph David Marks, Appellee**

---

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C-02-0355-AG, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Sandra Tobias (Mother) and Aaron R. Tobias (Child) appeal the trial court's final Order in Suit to Modify Parent–Child Relationship. In three appellate issues, they challenge the portions of the final order that denied (1) increased child support for February through September 2017, (2) further increased child support for October 2017 through May 2018,[1] and (3) any award to them of attorneys' fees, expenses, or costs. We affirm.

## BACKGROUND

Child's father is Joseph Marks (Father), who was ordered to pay Mother $185 per month in child support beginning in 2010. In January 2017, Mother petitioned to modify child support, alleging a material and substantial change in Child's, Father's, and her circumstances.

---

[1] Child turned 18 years old in April 2018 and graduated high school the next month. *See* Tex. Fam. Code § 154.001(a)(1).

Father answered the petition in February 2017, alleging in part that he had "not received any benefits since [his father's] death."

Father later began receiving inheritance from his parents' estate. The inheritance came to him largely in two ways—distributions of cash and an investment account containing "bonds and other securities" valued at roughly $335,000. Father's siblings received other bonds and securities as part of their inheritance. Father received his first cash distribution in October 2017, and the total amount of cash inheritance distributed to him that year was $156,488.92. After paying various attorneys' fees (Father's parents' estate administration was still being contested), Father lived off the interest generated by the investment account.

In late November and early December 2017, Mother amended her petition to modify and sought temporary orders to increase Father's monthly child-support payments. The trial court heard the motion for temporary orders near the end of the year and issued temporary orders increasing Father's monthly child-support payments to $1,300, beginning January 2018, and ordering him to pay a one-time lump sum of $5,000 for Child's "wisdom teeth extraction and/or work clothes." In January 2019, Child, by then over 18 years old, intervened as a petitioner because Mother had assigned him "a 50% interest out of [her] claim in this proceeding to modify and collect child support."

At the November 2019 final hearing, Father, his older sister, Mother, and Child testified, and the Court admitted exhibits. In its final order on the petition to modify, the court (1) found that the child-support calculations that Father had filed as proposed findings of fact and conclusions of law "are supported by the evidence submitted to the Court"; (2) ordered Father, based on those calculations, to pay increased child support for October through December 2017, in a total amount of $1,982.75 per month; (3) denied Mother and Child's request for increased

2

child support for February through September 2017; (4) denied their request for further increased child support for October 2017 through May 2018 beyond what the court ordered in this final order or in its temporary orders; (5) ordered each party to bear their own attorneys' fees and court costs; and (6) denied all other relief requested. Mother and Child now appeal the final order.[2]

## STANDARD OF REVIEW

We review a trial court's modification of child support for an abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Kerlick v. Kerlick*, No. 03-14-00620-CV, 2016 WL 4506162, at *2, 4–6 (Tex. App.—Austin Aug. 24, 2016, pet. denied) (mem. op.). Under this standard, the legal and factual sufficiency of the evidence are not independent grounds for appeal but are relevant considerations when deciding whether the trial court abused its discretion. *Goodson v. Castellanos*, 214 S.W.3d 741, 756 (Tex. App.—Austin 2007, pet. denied). Legal-and-factual-sufficiency review helps us decide "if the trial court had sufficient information on which to exercise its discretion." *Smith v. Detrich*, No. 03-07-00726-CV, 2010 WL 143287, at *2 (Tex. App.—Austin Jan. 13, 2010, no pet.) (mem. op.).

Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Goodson*, 214 S.W.3d at 756 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). But it is legally insufficient either when (i) there is a complete absence of evidence of a vital fact, (ii) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (iii) the evidence offered to

---

[2] Father did not file an appellee's brief on time, so our Clerk told him that he must file either a motion for an extension or his brief by September 28, 2020, lest this appeal be submitted on the appellants' brief alone. We then submitted this appeal on July 14, 2021, and Father still has not filed any motion for extension or appellee's brief. *See Baker v. Baker*, No. 03-09-00455-CV, 2010 WL 2010817, at *1 (Tex. App.—Austin May 18, 2010, no pet.) (mem. op.) (deciding appeal without appellee's brief).

prove a vital fact is no more than a mere scintilla, or (iv) the evidence establishes conclusively the opposite of the vital fact. *Smith*, 2010 WL 143287, at \*3 (quoting *City of Keller*, 168 S.W.3d at 810). In a legal-sufficiency review, we consider the evidence in the light most favorable to the decision under review, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See id.* (citing *City of Keller*, 168 S.W.3d at 807).

Evidence is factually insufficient if the court's ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Goodson*, 214 S.W.3d at 756. In a factual-sufficiency review, we must consider and weigh all the evidence. *Smith*, 2010 WL 143287, at \*3 (quoting *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). But we "may not pass upon the witnesses' credibility or substitute [our] judgment for that of the [factfinder], even if the evidence would clearly support a different result." *Id.* (quoting *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998)).

"After review of the evidence for legal and factual sufficiency, we then ask if, given the results of our review, the court abused its discretion." *Id.* "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, *i.e.*, whether the act was arbitrary or unreasonable." *Id.* (citing *Worford*, 801 S.W.2d at 109). If the court's decision is supported by evidence of a substantive and probative character, the court did not abuse its discretion. *Goodson*, 214 S.W.3d at 756. But the trial court has no discretion when deciding what law applies or in applying that law to the facts of the case. *Smith*, 2010 WL 143287, at \*2.

4

## DISCUSSION

**I.    The trial court did not abuse its discretion by refusing to modify child support retroactively for February through September 2017.**

In their first issue, Mother and Child contest the trial court's denial of increased child support for February through September 2017. They say that because the trial court increased child support for October through December of that year, it should have increased child support for all months in 2017, beginning with February because that is when Father filed his answer. *See* Tex. Fam. Code § 156.401(b)(2). Their issue presents a question of law, which they support with two different arguments.

The first is grounded in Family Code section 154.061, which requires courts "[w]henever feasible" to compute gross income first "on an annual basis and then" recalculate it "to determine average monthly gross income." *See id.* § 154.061(a). But the trial court obeyed the statute. It found Father's total gross resources for 2017; divided that amount by 12 to arrive at average monthly gross resources; reduced that amount to a monthly net-resources amount, *see id.* §§ 154.061(b), 154.062(a); and then applied the statutory guidelines' 20% figure to arrive at the increased amount of child support for October through December 2017—$1,982.75 per month in total. Based on Section 154.061(a)'s calculation, then, the court ordered Father to pay $1,982.75 per month[3] for October through December (less an offset for amounts already paid during those

---

[3] According to the trial court's findings, $1,982.75 per month is more than what the statutory guidelines provided for. *See* Tex. Fam. Code §§ 154.122(b) ("A court may determine that the application of the guidelines would be unjust or inappropriate under the circumstances."), 154.123(a) ("The court may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines."). The guidelines amount would have been $1,710 per month, which is 20% of $8,550. *See id.* § 154.125(a)–(b); *Klages v. Klages*, No. 03-20-00086-CV, 2021 WL 2604064, at *3 n.3 (Tex. App.—Austin June 25, 2021, no pet.) (mem. op.) (citing Off. of the Att'y Gen., Announcement of Adjustment Required by Texas Family Code §154.125, 38 Tex. Reg. 4647, 4647 (2013)).

months).  But it refused to order him to pay that monthly amount for February through September.  Mother and Child thus part ways with the trial court downstream of Section 154.061(a)'s calculation: they say that the court should have ordered Father to pay $1,982.75 per month starting in February rather than October.

Mother and Child's second argument concerns child-support obligations' accrual dates.  Section 156.401(b) provides that a "support order may be modified with regard to the amount of support ordered only as to obligations *accruing* after," here, January 2017.  (Emphasis added.)  In effect, they argue that Father's 2017 child-support obligation accrued once for the year 2017 and then that the obligation was to be subdivided into monthly installments, which would support Father's obligation to pay child support beginning in February.  By contrast, the trial court impliedly concluded that the monthly installments were separate obligations, each accruing in the month in which it was due.  Mother and Child's arguments thus call for us to decide when the 2017 child-support obligation(s) accrued.

Precedent suggests month by month.  For example, the accrual date of child-support payments drove the outcome of *Smith v. Smith*, 643 S.W.2d 523 (Tex. App.—Austin 1982, no writ).  There, the Smiths divorced; the divorce decree ordered the ex-husband to make monthly child-support payments; and, 10 years later, the ex-wife sued to recover child support, which the ex-husband had never paid.  *Id.* at 524.  He contended that the 10-year statute of limitations barred the entire suit because limitations began running on the day of the divorce decree.  But this Court affirmed the summary judgment in the ex-wife's favor because child-support "payments do not become final until each accrues," meaning that for "prospective child support payments in periodic installments, each such installment becomes a liquidated sum, and therefore susceptible of enforcement only after it becomes due and payment is not made."  *Id.*; *see also Rumpf v. Rumpf*,

6

242 S.W.2d 416, 479 (Tex. 1951) (similar accrual rule for alimony).  The child-support obligations thus accrued month by month.

The child-support order in place for Father before the modification at issue dovetails with this understanding of month-by-month accrual.  The order required Father to pay Mother "child support of $185.00 each month beginning the 1st day of January, 2010, payable on or before that date and on or before the same day of each month thereafter."  This appeal presents no challenge to the validity of Father's payments of $185 per month for February through September 2017 under the pre-modified child-support order; it challenges the trial court's refusal to modify those already-paid obligations by increasing them to $1,982.75 per month.  But Mother and Child's arguments fail to recognize that modifying child support is within the trial court's discretion.  Because the court "may" modify child-support orders "with regard to the amount of support ordered," *see* Tex. Fam. Code § 156.401(b), applying the statute "is not mandatory, but, rather, is left to the broad discretion of the trial court."  *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 582 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (citing *Willis v. Willis*, 826 S.W.2d 700, 702 (Tex. App.—Houston [14th Dist.] 1992, no writ)).  Whether to extend a child-support modification retroactively is thus within the trial court's discretion.  *See id.*; *see also Klages v. Klages*, No. 03-20-00086-CV, 2021 WL 2604064, at *2 (Tex. App.—Austin June 25, 2021, no pet.) (mem. op.) ("[T]he extent of the alteration of the amount of child support . . . lies within the court's discretion." (citing *Nordstrom*, 965 S.W.2d at 578)).  In other words, the trial court was not legally bound to increase child support for all months in 2017 just because it increased it for some months in 2017.

In deciding whether to exercise its discretion to modify child support, the trial court may consider the statutory guidelines and "other relevant evidence in addition to the factors

7

listed in the guidelines." Tex. Fam. Code § 156.402(a), (b). The "other relevant evidence" here included the fact that Father did not receive the inheritance until October 2017. That gave the trial court sufficient information on which to exercise its discretion not to make the child-support modification retroactively earlier than October 2017. *See Smith*, 2010 WL 143287, at \*2. That decision by the trial court was not arbitrary or unreasonable, *see id.* at \*3, and, as mentioned above, was not subject to a mandatory legal requirement, as Mother and Child argue. We thus overrule their first issue.

**II.     The trial court did not abuse its discretion by excluding from its child-support calculations the roughly $335,000 value of the investment account.**

In their second issue, Mother and Child contend that the trial court's increases in child support for October 2017 onward did not go far enough. Their arguments address two distinct periods—2017 and January through May 2018. *See* Tex. Fam. Code § 154.061(a) ("Whenever feasible, gross income should first be computed on an annual basis and then should be recalculated to determine average monthly gross income.").

*A.     2017*

The child-support increase for 2017, which the court ordered in its final order, was based on cash that Father received, from either his inheritance or other sources, but did not include the roughly $335,000 value of the bonds and other securities in the investment account. The trial court ordered an increase in child-support payments based on the cash received, exceeding the statutory guidelines, as stated above. Mother and Child argue that the calculation of Father's resources should have included the roughly $335,000 value of the investment account because "securities including stocks and bonds should be considered income just the same as the Internal Revenue Service considers income from payments in property (other than cash)." They point out

8

that Father could have chosen to receive the investment account's value in cash rather than keeping it in bonds and other securities in the account.

Family Code section 154.062 describes the "resources" that a court "shall" consider when calculating child support. *See* Tex. Fam. Code § 154.062(a)–(f). Such resources include:

(1) 100 percent of all wage and salary *income* and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);

(2) interest, dividends, and royalty *income*;

(3) self-employment *income*;

(4) net rental *income* (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation); and

(5) all other *income* actually being received, including severance pay, retirement benefits, pensions, trust *income*, annuities, capital gains, social security benefits other than supplemental security income, United States Department of Veterans Affairs disability benefits other than non-service-connected disability pension benefits, as defined by 38 U.S.C. Section 101(17), unemployment benefits, disability and workers' compensation benefits, interest *income* from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.

*Id.* § 154.062(b) (emphases added).

"Income," for purposes of this statute, "includes all forms of payment received periodically from 'employment, business, investments, royalties, gifts, and the like.'" *Attaguile v. Attaguile*, 584 S.W.3d 163, 183 (Tex. App.—El Paso 2018, no pet.) (quoting *Loya v. Loya*, 526 S.W.3d 448, 452 (Tex. 2017)). The funds in a bank account thus are not income; instead, and "[a]t most," "interest payments" generated from those funds could be "income." *Id.* Similarly, a father's "$34,391.59 in income from cashing out his retirement account" could be included when calculating child support. *Koenig v. DeBerry*, No. 03-09-00252-CV, 2010 WL 1009170, at *4 (Tex. App.—Austin Mar. 17, 2010, no pet.) (mem. op.). As could proceeds from the sale of stock, in another parent's case. *See Goodson*, 214 S.W.3d at 757.

9

What "income" means is further clarified by Family Code section 154.067. Under that statute, not all assets necessarily produce "income" for calculating child support:

(a) When appropriate, in order to determine the net resources available for child support, the court may assign a reasonable amount of deemed income attributable to assets that do not currently produce income. The court shall also consider whether certain property that is not producing income can be liquidated without an unreasonable financial sacrifice because of cyclical or other market conditions. If there is no effective market for the property, the carrying costs of such an investment, including property taxes and note payments, shall be offset against the income attributed to the property.

(b) The court may assign a reasonable amount of deemed income to income-producing assets that a party has voluntarily transferred or on which earnings have intentionally been reduced.

Tex. Fam. Code § 154.067(a), (b).

The trial court's "resources" decisions must be supported by "some evidence of a substantive and probative character." *Norris v. Norris*, No. 03-12-00108-CV, 2013 WL 812110, at *7 (Tex. App.—Austin Feb. 27, 2013, no pet.) (mem. op.) (citing *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). Such decisions are reviewed for an abuse of discretion. *See Monroy v. Monroy*, No. 03-10-00275-CV, 2011 WL 3890401, at *4–5 (Tex. App.—Austin Aug. 31, 2011, pet. denied) (mem. op.).

The evidence showed that Father lived off the interest generated by the investment account. It also showed that when he received the investment account and could have liquidated its contents and received the value in cash, he chose not to because keeping the account intact maximized its value. His sister testified similarly: she did not want their parents' estate's administrator to liquidate the bonds and securities but wanted them kept as investments to be distributed to herself, Father, and their other sibling, even though the administrator suggested liquidating. The administrator and Father and his siblings agreed not to liquidate. All this

10

constitutes evidence of a substantive and probative character. *See Norris*, 2013 WL 812110, at *7. Because Father used only the interest generated by the account, keeping the account otherwise intact by not receiving any other money from it to preserve his ability to pay his bills from the interest generated, the trial court was within its discretion when it decided not to include the roughly $335,000 value when calculating Father's "resources." *See In re L.A.-K.*, 596 S.W.3d 387, 397–98 (Tex. App.—El Paso 2020, no pet.) (trial court abused its discretion by including in child-support calculation "savings and investments of 'maybe 100,000' in a 401(k), a college savings fund, and a Thrift Savings Plan" when "there [wa]s no evidence of whether those savings and investments generate any income"); *Attaguile*, 584 S.W.3d at 183 ("At most, any income generated from the bank account in the form of interest payments could be considered as a net resource for purposes of determining Angelo's income under the statutory guidelines set forth in section 154.062 of the Family Code, but not the principal funds contained in the bank account itself."); *see also* Tex. Fam. Code § 154.067 (trial court "may" include "deemed income" from "assets that do not currently produce income"); *In re K.M.B.*, 606 S.W.3d 889, 895 (Tex. App.—Dallas 2020, no pet.) (statute requires "receipts of money" to be included in "resources," unless otherwise statutorily excluded). We thus hold that the trial court did not abuse its discretion in this respect and overrule this portion of Mother and Child's second issue.[4]

---

[4] We are not persuaded by Mother and Child's analogies to *In re A.M.P.*, 368 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2012, no pet.), and *In re P.C.S.*, 320 S.W.3d 525 (Tex. App.—Dallas 2010, pet. denied). Those cases involved amounts liquidated into cash, not value held in interest-paying accounts. *See A.M.P.*, 368 S.W.3d at 844, 848–50 ("although his mother's business did not give him a paycheck for his work, Kohl's mother had advanced him sums totaling in excess of $80,000"); *P.C.S.*, 320 S.W.3d at 535–40 (cash inheritance).

### B.    *January through May 2018*

In the rest of their second issue, Mother and Child contest the trial court's refusal to increase any further Father's child support for January through May 2018. For that period, the trial court's temporary orders required Father to pay $1,300 per month plus the one-time lump sum of $5,000. Then in its final order, the trial court concluded that Father owed nothing further for that period and that he had paid the $1,300 per month and $5,000 lump sum, totaling $11,500 in child support paid for 2018.

Although the child support for 2018 was calculated within a new 12-month period distinct from 2017, *see* Tex. Fam. Code § 154.061(a) ("Whenever feasible, gross income should first be computed on an annual basis and then should be recalculated to determine average monthly gross income."), Mother and Child again rely on the argument that the roughly $335,000 in value of the investment account should have been included in the 2018 calculation. They argue that the trial court should have calculated Father's 2018 average monthly net resources to be $39,916.66, which is the quotient produced after adding $144,000 (a portion of Father's cash inheritance received in 2017) and $335,000 and then dividing their sum by 12. So while the trial court's child-support calculations for 2017 and 2018 were different, Mother and Child argue on appeal that they should have been calculated using the same amounts, including the $335,000 value. Because we have already rejected Mother and Child's position about the trial court's discretion to exclude that value from its calculations, we overrule the rest of their second issue.

### III.    The trial court did not abuse its discretion by refusing to award Mother and Child attorneys' fees, expenses, and costs.

In their third issue, Mother and Child contend that the trial court abused its discretion by refusing to award them attorneys' fees, expenses, and court costs. Every litigant

12

generally must pay his or her own attorneys' fees, expenses, and costs, unless, as relevant here, a fee-shifting statute applies. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483–84 (Tex. 2019). In that context, Mother and Child concede that "trial courts must derive authority to order attorney's fees in non-enforcement modification suits" like theirs "from [Family Code] Title 5's general attorney's fees provision in section 106.002." *See Tucker v. Thomas*, 419 S.W.3d 292, 296–97 (Tex. 2013).

Family Code section 106.002(a) provides that "the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney." Costs are also available: "The court may award costs in a suit or motion under this title." Tex. Fam. Code § 106.001. Under either statute, because they both use "may," we review the trial court's decisions for an abuse of discretion. *See Monroy*, 2011 WL 3890401, at *7; *Goodson*, 214 S.W.3d at 758; *accord Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). That discretion is broad: there is no "bright-line rule (or even an articulable rule)" for entitlement to attorneys' fees, expenses, and costs in suits like this, but prevailing-party status is a factor to consider. *See K.M.B.*, 606 S.W.3d at 900; *Coburn v. Moreland*, 433 S.W.3d 809, 840 (Tex. App.—Austin 2014, no pet.); *see also* Tex. R. Civ. P. 131 (default rule for costs is to award to prevailing party), 141 (courts may adjudge costs otherwise for good cause stated on the record). Hand-in-glove with its broad discretion, the trial court "is in the best position to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal." *Coburn*, 433 S.W.3d at 840 (internal quotations omitted). Deciding whether a party prevailed in suits like these is difficult and fact-intensive, and a party can prevail even if the party did not "win on all or even most of the requested relief." *See id.* A trial court does not abuse its discretion when there is some evidence to support its decision. *See In re N.E.C.*, No. 05-18-01156-CV,

13

2020 WL 3286522, at *2 (Tex. App.—Dallas June 18, 2020, pet. denied) (mem. op.); *see also* *Moroch v. Collins*, 174 S.W.3d 849, 870 (Tex. App.—Dallas 2005, pet. denied) (trial court may allocate awards of attorneys' fees, expenses, or costs "as the facts may warrant").

We have already held that the trial court did not abuse its discretion by refusing to modify child support retroactively for February through September 2017 or by refusing to include the $335,000 value of the investment account in its child-support calculations. On at least those two issues, then, Father prevailed in the trial court (and now again on appeal). His prevailing in these ways gave the trial court discretion not to award Mother and Child attorneys' fees, expenses, and costs, so we hold that it did not abuse its discretion. *See Coburn*, 433 S.W.3d at 840; *see also* *In re J.M.W.*, 470 S.W.3d 544, 557 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (trial court did not abuse its discretion by awarding attorneys' fees to mother, even though it otherwise abused its discretion when setting amount of child-support award to mother, because mother prevailed on "the trial court's underlying determination that the child qualifies for support"); *Norris v. Norris*, 56 S.W.3d 333, 346 (Tex. App.—El Paso 2001, no pet.) ("Patricia prevailed on her motion to modify, and Robin's contention that she should have failed in her effort does not compel us to determine that the fee award constitutes an abuse of discretion."). This can be so even though Mother prevailed on increasing child support beyond $185 per month and even though Mother and Child argue that Father alone made the litigation difficult and costly. *See Coburn*, 433 S.W.3d at 840 (stating that trial court "is in the best position to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal" and that party can prevail even if party did not "win on all or even most of the requested relief" (internal quotations omitted)). We overrule Mother and Child's third issue.

14

**CONCLUSION**

We affirm the trial court's final order.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   August 31, 2021